*941 OPINION OF THE COURT
Elaine Jackson Stack, J.
Plaintiff moved by order to show cause for an order (1) permitting plaintiff and her computer forensic experts to “impound, clone and inspect the computer servers, hard drives, individual workstation PC., laptops and other items containing digital data” or electronic data from the defendant’s residence in Great Neck, New York, or any other location where Variety Accessories, Inc. conducts business; (2) directing that plaintiff and/or her computer forensic experts “gain access” into defendant’s residence in Port Washington, New York, into Variety’s Great Neck, New York location or any other New York location where Variety’s computer equipment can be found; (3) directing that deputy sheriffs from Nassau County accompany plaintiff and/or her computer forensic experts and that they “take whatever steps are necessary, including but not limited to breaking down, breaking open, searching for, and/or removing any obstacles that may impede such entrance”; (4) directing that the sheriff’s department be held harmless from any liability occasioned through gaining control of defendant’s computers; (5) directing that defendant “cease the rotation, alteration and/or destruction of electronic media that would result in the inability to recover the sought over computer data regarding all actual and potential business interests involving the Defendant”; (6) directing the defendant to pay plaintiff’s counsel $15,000; and (7) directing the defendant to pay plaintiffs “Certified Computer Forensic Specialist” $15,000 in fees. These requests were denied in the order to show cause dated September 27, 2004. On October 1, 2004, the order was modified by the Appellate Division to the extent only of granting paragraph 5 above.
Defendant opposed plaintiffs application and cross-moved for the following relief: (1) requiring plaintiff to post a bond in the sum of $15 million to cover potential losses if the expert should cause information to be lost relative to sales or shipping or other client data, if the computer work causes a disruption or other interruption in business services, or the expert divulges any proprietary business information; and (2) directing that plaintiff be responsible for any diminution in value of Variety if any proprietary information is disclosed or any information is lost as a result of the forensic inspection.
Plaintiff alleges that the history of the defendant’s “past fraudulent conduct” including the “diversion of eight or nine *942 million dollars in money and real estate from Variety, in which [she] is a fifty percent shareholder” (plaintiffs affidavit, Sept. 22, 2004, 1Í 2), compel her to seek a “preemptive strike to clone the computer records” (id. 11 4).
Plaintiffs affidavit recites the history of defendant’s alleged conduct in creating “shell” companies, transferring ownership to his 92-year-old father, and purchasing $4 million in real estate through a convoluted transfer of funds in and out of several Channel Island trusts. Plaintiff asserts all these transfers were “bogus and fraudulent and [were] a common scheme to deprive [her] of [her] fair share of marital assets.” (Id. 1i 7.)
Defendant, in his opposition affidavit, asserts that plaintiffs application is “outrageous” and that plaintiff has shown “absolutely no basis whatsoever for the extraordinary relief she seeks.” (Defendant’s affidavit, Oct. 22, 2004, 1i 1.) Defendant further asserts that the relief sought by plaintiff is “overbroad, intrusive, [and] burdensome.” (Id. 1Í 21.) Defendant further asserts that his past experiences with plaintiffs attorneys give him no confidence that proprietary information, which would be obtained from such a search of computer data, would be safeguarded since they have a history with him of “reckless and careless handling of company information and assets.” Defendant asserts that plaintiffs counsel “lost” a tape he provided to them which contained confidential documents and that plaintiffs counsel shared these “sensitive, confidential documents” with third parties without his permission. (Id. 1i 20.)
Defendant asserts his uncertainty over the qualifications of plaintiffs expert and offers, as an alternative, that he
“would be amenable to having my very experienced Management Systems Director . . . meet with . . . plaintiffs ‘computer expert’ to discuss how a search can be done bn Variety’s operating system to segregate the documents, emails, etc. relating to the entities specified in plaintiffs order to show cause from all of the other documents, emails etc on the computer and safely copied in a manner that would pose the least risk to Variety’s operating system.” (Id. 1Í 22.)
Discussion
When discovery which is sought is relevant and material, pursuant to CPLR 3101 (a), and not subject to claims of privilege, pursuant to CPLR 3103 (a), disclosure is proper and should be *943 permitted. In matrimonial matters parties are entitled to full disclosure of all financial information concerning marital assets held during the marriage, including business records, real estate transactions, examinations of accounting procedures, financial records, and both hard copy and computer stored data. Courts have held that the contents of a computer are analogous to the contents of a filing cabinet. (Byrne v Byrne, 168 Misc 2d 321 [Sup Ct, Kings County 1996].)
There can be no quarrel that the information being sought fulfills the “material and necessary” requirement of statute. Material demanded through discovery that can possibly be used as evidence-in-chief, for rebuttal or for cross-examination must be produced. (Lipco Elec. Corp. v ASG Consulting Corp., 4 Misc 3d 1019[A], 2004 NY Slip Op 50967 [Sup Ct, Nassau County 2004].)
As the court stated in Lipco (supra), some of the questions presented in the quest for electronic discovery include a determination that the sought-after documents still exist on a computer’s hard drive, whether certain documents have been deleted, the type of software used to create and store documents, and whether the software is commercially available or was created solely for the user.
In cases in which it is suggested that some files may have been deleted or altered, the services of a computer expert are required to insure complete and accurate discovery of relevant data. Notwithstanding an effort to delete certain information, computer experts assert that they can nonetheless “clone” a hard drive and restore or rescue deleted documents. Some files may need review by the court or by a referee to determine if they contain privileged data. (See, Antioch Co. v Scrapbook Borders, Inc., 210 FED 645 [D Minn 2002].)
In the case at bar, plaintiffs request for computer data is all-encompassing. She seeks data from all computers, including defendant’s personal computer which may contain electronic mail, any information related to Variety, word processing files, calendars and/or schedules regarding Colección de Santa S.A., Colección de Santa Export, Zhejiang Shaoxing Royal Arts & Crafts Co., Saba Properties Holding, Ltd., Channel Island Trusts, and Inversiones del Mediterráneo. Defendant refers to these companies as the “Foreign Entities.”
Plaintiffs application, according to defendant, is so overbroad as to constitute a violation of defendant’s rights both to privacy and to privilege, as it involves communication with his attorney, *944 his employees and with third parties unconnected to this litigation.
Defendant consents to discovery of financial matters related to the Foreign Entities, but takes exception to the broad demand for all documents on the computers. He does not agree, as plaintiff asserts, that he has somehow waived attorney-client privilege in this matrimonial litigation or in the related commercial case. CPLR 3103 (a) permits the court to issue protective orders which are designed to prevent unreasonable annoyance, expense, embarrassment, disadvantage or other prejudice to any person by limiting or conditioning the use of any disclosure device.
The court finds that disclosure of communications between defendant and his counsel are privileged communications and as such are not to be disclosed to plaintiff or her attorneys. Personal e-mails between defendant and third parties, unrelated to any business matter, are also not discoverable. The means to limit such disclosure is delineated below.
Both plaintiff and defendant have identified computer experts, persons able to extract data from a computer, and copy or clone the hard drive. This process can be accomplished in a relatively short time. Neither party has identified how many computer hard drives are involved and what their location is. Plaintiff indicates defendant has business records in both Port Washington and Great Neck locations and a personal computer. There may be other locations at which Variety does business and at which records are kept. Defendant is directed to disclose these locations.
The court previously appointed Richard N. Tannenbaum, Esq., as attorney referee to supervise discovery. Defendant shall notify the referee of the locations of computers on which business records are maintained or entered.
Thereafter, plaintiff’s expert, accompanied by defendant’s expert and the attorney referee, shall be present at the locations designated as sources of computer data. The plaintiff’s expert shall clone or copy the hard drives of such computers. The resultant hard drive shall be immediately turned over to the referee. This procedure shall be followed until all computers on which business records of Variety and/or the Foreign Entities appear shall be cloned, with the resultant copy turned over to the referee.
At a location jointly selected by the aforesaid computer experts of each of the parties and the referee, the hard drives *945 shall be examined. Hard copies of any business records found on such hard drives will be made and distributed to attorneys for both parties. The records must relate to the Foreign Entities and/or Variety. Personal records, e-mails or other correspondence between defendant and third parties and/or defendant and his counsel shall not be copied or transmitted to any attorney.
At the conclusion of the review of the cloned hard drives, the referee shall maintain control of the clones until conclusion of this matter, at which time the cloned hard drives will be returned to defendant for disposal. Where questions arise as to the appropriate review of a particular document, the referee’s determination shall be final.
This aspect of discovery shall be entered into as soon as practicable and should be completed by March 21, 2005.
Plaintiff requested that defendant provide her with the sum of $15,000 for her attorney and an equal amount, $15,000, for her computer expert. Under the CPLR, the party seeking discovery should incur the costs in the production of discovery material. (See, Schroeder v Centro Pariso Tropical, 233 AD2d 314 [2d Dept 1996]; Rubin v Alamo Rent-A-Car, 190 AD2d 661 [2d Dept 1993].)
The court therefore determines that plaintiff shall bear the cost of the production of the business records she seeks, subject to any possible reallocation of costs at trial. Plaintiff shall pay the expenses of her expert(s), including the cost of hard copy production. Defendant shall be responsible for the expenses of his own expert(s) who are present to oversee the cloning or copying process. Fees for the attorney referee shall be shared in the manner described in the court’s prior order of appointment.
The court notes that plaintiff has substantial assets which are sufficient to pay her attorney’s fees, subject to possible reallocation of such fees at trial. Her applications for fees are denied.
Defendant’s application for a bond to reimburse him for any potential damage to his computer system or diminution of value to Variety or any other business interest is denied. Defendant’s computer expert, who will be present with the referee when the business computers are cloned, is able to protect defendant and his business interests from any potential damage.
The parties are directed to establish with the referee precisely what information is still required in order to make financial evaluations of defendant’s business holdings. Plaintiff asserts *946 that many business transactions have occurred which deprived her of the assets of Variety, because defendant transferred assets to other corporations in which he has an interest or over which he exerts control. Transactions with all of these companies are the subject of this discovery and all such matters must be determined expeditiously.
Further, any documents related to the proposed sale of Variety, offers to purchase and declinations of such offers, are also subject to discovery. Allegations of the reasons that the sale of Variety did not occur must be supported by documentation, if such documents exist.