OPINION OF THE COURT
John B. Riordan, J.
In this proceeding to determine the validity of a right of election, respondent Margaret Maura has moved for contempt against the petitioners, John Maura, Jr. and Ronald Maura, nonparty witness, Warren Finnell, Esq., and the law firm of Congdon, Flaherty, O’Callaghan, Reid, Donlon, Travis & Fish-linger (hereinafter the Congdon law firm), to which Mr. Finnell is of counsel. The Congdon law firm has cross-moved for an order quashing the subpoena served by the respondent and for a protective order.
Procedural Background
Respondent and the decedent, John B. Maura, were married on July 11, 1999. The couple executed a prenuptial agreement wherein each renounced their spousal right of election. The prenuptial agreement was drafted by Mr. Finnell. The decedent’s will dated June 8, 2001 did not provide for respondent. Respondent, thereafter, filed a notice of election dated March 23, 2003. Petitioners commenced the instant proceeding asserting that respondent is not entitled to an elective share by reason of the prenuptial agreement wherein respondent waived her right to share in the decedent’s estate (EPTL 5-1.1-A [e]). Respondent, who stated that she signed the prenuptial agreement without reading it, contends that the prenuptial agreement is null and void as it is a product of fraud, deception and undue influence. Respondent further alleges that she was not represented by an attorney, although the agreement indicates that she was. Respondent claims that the decedent did not disclose his net worth and assets on the financial statement annexed as a schedule to the prenuptial agreement.
Mr. Finnell was deposed over the span of three days. In addition to drafting the prenuptial agreement, Mr. Finnell also advised the decedent and his first wife Ann Maura in connection *239 with estate planning for the period 1995 through 1997. Mr. Finnell testified that he reviewed the financial planning file of the decedent to refresh his recollection concerning the disposition of the decedent’s property and disclosure of certain assets. After Mr. Finnell’s deposition, respondent moved for an order compelling the following disclosure: (1) the estate planning file of the decedent held by Mr. Finnell; (2) all documents in connection with transfers of property from Ann Maura, decedent’s first wife; (3) statements of income produced by such properties two years prior to transfer; and (4) access to the business computers of Mr. Finnell to copy all existing and deleted records of the May 31, 1999 prenuptial agreement, recreate any billing records of the decedent for estate planning and the prenuptial agreement, and to obtain sample copies of other prenuptial agreements prepared by Mr. Finnell with privileged material redacted.
By decision dated August 18, 2005 (decision No. 529), this court found that Mr. Finnell’s file should be made available since he reviewed the file in connection with his deposition. The court determined that the requested information (i.e., the estate planning file, the statements of income and the transfer documents) might be relevant as to the decedent’s disclosure of his financial assets and directed petitioners to comply with respondent’s demand within 20 days after service of a copy of the order.
Concerning respondent’s request for access to certain documents, records and information contained on Mr. Finnell’s computer relative to the preparation of the prenuptial agreement, the court denied that branch of the motion because the Cong-don law firm was not properly put on notice of the demand. Thereafter, the Congdon law firm was served with a subpoena duces tecum and notified respondent’s counsel in writing of its objections to the subpoena.
The respondent has now moved for contempt and seeks an order (i) holding the petitioners and Warren Finnell, Esq. in contempt for failing to produce the entire estate planning file, including without limitation, all the documents contained therein together with the jacket thereof; and (ii) directing the Congdon law firm to provide access to the business computers of Warren Finnell, Esq. by a computer professional chosen by the respondent to copy all existing and deleted records concerning the prenuptial agreement of the decedent and respondent, all billing records concerning services rendered in connection *240 with the estate planning and the prenuptial agreement, all other records in connection with estate planning contained therein and copies of other prenuptial agreements drafted by Mr. Finnell to determine his usual course of practice (with privileged information to be redacted).
Estate Planning File and Related Documents
Respondent argues that petitioners have failed to produce Mr. Finnell’s entire file. In support of her position, respondent notes that petitioners’ counsel’s transmittal letter forwarding the documentation stated “[ejnclosed herewith please find all of the responsive documentation from the files of Warren Finnell, Esq.” (emphasis added). According to respondent, the records produced were incomplete and did not include some of the records that Mr. Finnell testified were contained within his files such as the actual list of assets and records of income (other than tax returns) generated by these properties. Respondent believes that counsel’s transmittal letter demonstrates that counsel provided only those documents which he determined were “responsive.” Respondent asks that the court hold petitioners and Mr. Finnell in contempt or make a finding against petitioners holding that the prenuptial agreement is not valid. Respondent also asks the court to assess attorneys’ fees and impose punitive sanctions against petitioners and Mr. Finnell.
Petitioners’ counsel has submitted an affirmation in which he states that “all documentation concerning planning or transfers made by the decedent and his first wife at a time frame that predates the April, 1998 first meeting of the Decedent and the Respondent, Margaret Maura, have already been produced and are in the possession of the Respondent and her attorneys.” Counsel further states that there are no other documents and that every document Mr. Finnell reviewed has been produced. Counsel disputes respondent’s assertion that he provided only documents he determined to be “responsive” and states: “All documents have been produced and Respondents have everything that exists and that has been requested and ordered to be turned over, there is no list of assets as Mr. Finnell has testified to. Respondents have all of the information contained in Mr. Finnel’s [sic] planning file.” Counsel concedes that the only item that has not been turned over is the file jacket.
Mr. Finnell has also submitted an affidavit in which he states that in one of his early meetings in 1995 with the decedent and *241 his wife Ann the decedent gave him a handwritten list of his and his wife’s real estate holdings. Mr. Finnell states that he put the list into an estate planning file and he has thoroughly looked in all of his files concerning the decedent’s estate planning and has been unable to locate that list. Mr. Finnell also states that he has removed nothing from the files.
The court denies the branch of the motion which seeks to hold Warren Finnell and petitioners in contempt for failure to comply with the court’s August 18, 2005 decision and order. It appears that respondent has been provided with all records required to be produced by the court’s prior decision and order. Mr. Finnell avers that he has made a thorough search and is unable to locate a list of assets produced by the decedent and his first wife in 1995. Mr. Finnell is directed, however, to make available to respondent for inspection and copying the jacket of his file within 20 days of the date of service of this decision.
Access to Computer Records
Respondent seeks access to the business computers of the Congdon law firm: (i) to copy all existing and deleted records of the May 31, 1999 prenuptial agreement; (ii) to recreate any billing records of the decedent for estate planning and the prenuptial agreement; (iii) to copy all other records with respect to the estate planning; and (iv) to obtain sample copies of other prenuptial agreements prepared by Mr. Finnell with privileged material redacted.
The respondent argues that there are serious “irregularities” in the preparation and execution of the prenuptial agreement which warrants the electronic discovery requested. Respondent’s counsel claims that there are many “unanswered questions and conflicts” regarding the number and contents of prior drafts of the agreement, when it was prepared, when it was signed and how it was executed. According to counsel, the signatures of the decedent and respondent appear on a separate page and information was typewritten on the schedule concerning the assets held by the decedent. In addition, counsel claims that someone inserted in the agreement the name of Lloyd Nadel, as the attorney who represented the respondent in connection with the agreement. The name appears in a different font in the agreement. Respondent claims she never consulted with this attorney; however, it appears from the deposition testimony of Mr. Nadel and the respondent’s son-in-law that Mr. Nadel had in fact represented the respondent’s son-in-law. The deposition *242 testimony also establishes that the respondent’s son-in-law gave Mr. Nadel’s name to respondent as someone to contact regarding the prenuptial agreement. Respondent further claims that copies of the agreement in her possession differ substantially from the copies held by the decedent. Respondent contends that the issue of the authenticity of the prenuptial agreement requires cloning of the Congdon law firm’s computers, a process that was approved in Etzion v Etzion (7 Misc 3d 940 [Sup Ct, Nassau County 2005]).
Respondent has submitted a proposal from John Lucich of Network Security Group as how the electronic discovery should be conducted. Mr. Lucich proposes to remove the hard drive from the Congdon law firm’s server and take it to his office in New Jersey where he will make a clone of the hard drive. Mr. Lucich prefers to do this cloning process in his office because it is less expensive and he will have special hardware and software utilities available there which may be necessary in order to aid in the process. According to Mr. Lucich, he may not be able to do this at the Congdon law firm’s office because the operating system is an older system. Respondent argues that there will be minimal disruption to the Congdon law firm by taking the server out of service. According to counsel, it is unclear whether the server is actually still in use since the Congdon law firm, despite initially advising Mr. Lucich that the server was no longer in use, now claims that the server is still in use. Regarding the issues of cost and attorney-client privilege, respondent is willing to pay the cost of Mr. Lucich’s services and proposes that Mr. Lucich will download the necessary documents and place them in a sealed envelope to be delivered to the court. Respondent suggests that the Congdon law firm can then make any privilege objections by motion within 10 days or release the documents. Respondent further contends that the court can hold the cloned hard drive until the conclusion of the matter. Lastly, respondent proposes that if the Congdon law firm desires its own expert to oversee the project, those charges should be borne by it.
The Congdon law firm opposes the respondent’s request for access to the firm’s computer system. The Congdon law firm was served with a subpoena dated October 15, 2005. The Cong-don law firm opposes the subpoena on the following grounds: (i) the subpoena, which was not accompanied by a notice of discovery and inspection, does not give proper notice setting forth the “circumstances or reasons such discovery is sought or *243 required”; (ii) the statements in it are not adequate to permit the disclosure of nonparty materials; (iii) the subpoena is vague, overly broad and unduly burdensome; (iv) the items sought, if they exist, are not material and necessary to the litigation; (v) extensive discovery materials have already been provided; (vi) the subpoena fails to describe adequately the “manner of making the inspection”; and (vii) the subpoena calls for the production of material which is protected by the attorney-client privilege.
The Congdon law firm argues that the respondent’s proposed method is the “very definition of invasive.” Moreover, the Cong-don law firm contends that respondent’s proposal is flawed since Mr. Lucich has been retained by the respondent and may be partial to the respondent’s interest. Additionally, the Cong-don law firm argues that the Disciplinary Rules of the Code of Professional Responsibility (DR 4-101 [22 NYCRR 1200.19]) provide that it is an attorney’s ethical obligation to maintain the confidences and secrets of clients and former clients. The Congdon law firm points out that the respondent’s computer professional would have access to the firm’s personal and personnel information. Most of the information contained on the firm’s hard drive has nothing to do with this proceeding and contains privileged and confidential information and attorney work product. The Congdon law firm argues that respondent has already been provided with hard copies of the final prenuptial agreement, as well as hard copies of all draft versions of the prenuptial agreement that exist on the law firm’s hard drive. According to counsel, there are four versions, including the final version of the agreement. Three versions are unsigned drafts. Moreover, the Congdon law firm points out that Etzion v Etzion (7 Misc 3d 940 [Sup Ct, Nassau County 2005]) is distinguishable because that case involved discovery of a party’s computer hard drive and evidence had been presented that the defendant husband had deleted and altered information on his computer.
Instead, the Congdon law firm proposes that, if the court determines that discovery is proper, the information sought by respondent should be acquired from the firm’s backup tape that existed from 1999 to the present. The Congdon law firm asserts that this backup tape, which is a separate storage medium from the backup hard drive, can be accessed via the tape driver on the law firm server. Use of this method will prevent the respondent from being able to view currently pending cases. Since the backup information on the tape does not exist in retrievable *244 form, computer forensic experts will be necessary to retrieve this information. The Congdon law firm concedes that, although its proposed method would not provide information on deleted materials or alterations, there is no “meritorious allegation” that deletions or alterations were, in fact, made.
With respect to the issues of cost, the Congdon law firm argues that since both Mr. Finnell and the Congdon law firm are nonparties, respondent should be ordered to pay the costs of the electronic discovery whether the court accepts the respondent’s proposal or the proposal of the Congdon law firm. The Congdon law firm has contacted Lincoln Computer Services which has requested a retainer of $7,500 to oversee the restoration and retrieval of the Maura files on the 1999 backup tape.
Analysis
Discovery
Generally, there is full disclosure of all matter “material and necessary” in the prosecution or defense of an action (CPLR 3101 [a]). It is well settled that the court has broad discretion over the discovery process to decide whether information sought is “material and necessary” to the prosecution or defense of an action (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968]). The words “material and necessary” are to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy. The test is one of usefulness and reason (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968]; see also Andon v 302-304 Mott St. Assoc., 94 NY2d 740 [2000]). Discovery of documents is permitted even if they are not admissible in evidence provided that the production of such documents may lead to disclosure of admissible evidence (Fell v Presbyterian Hosp. in City of N.Y. at Columbia-Presbyt. Med. Ctr., 98 AD2d 624, 625 [1st Dept 1983]). In addition, pursuant to CPLR 3103 (a), “[t]he court may ... on its own initiative . . . make a protective order denying, limiting, conditioning or regulating the use of any disclosure device. Such order shall be designed to prevent unreasonable annoyance, expense, embarrassment, disadvantage or other prejudice to any person or the courts.”
Estate Billing and Planning Records
With respect to the billing records relating to the estate planning for the decedent and his wife, the court finds that these *245 items have no bearing on the controversy. Respondent has not shown how the estate planning billing records have any bearing on the issue of the validity of the prenuptial agreement. Accordingly, access to the Congdon law firm’s computer system for the billing records relating to the estate planning work is denied. Similarly, respondent’s request to copy all estate planning records contained on the Congdon law firm’s computer system is denied. Respondent has already been provided with hard copies of the decedent’s estate planning file. There is no allegation that there is a need to determine whether the documents have been altered or deleted. Moreover, access to the computer system will not lead to the “list of assets” as Mr. Finnell affirms that the list was a handwritten list prepared by the decedent.
Prenuptial Agreements for Other Clients
Concerning the respondent’s request for access to the computer records to copy other prenuptial agreements drafted by Mr. Finnell so as to determine his usual course of practice (with privileged information to be redacted), the request is denied. First, the other prenuptial agreements prepared by Mr. Finnell have no bearing on the authenticity of the Maura prenuptial agreement and respondent’s claim that the agreement was somehow altered. Second, the attorney-client privilege protects such documents from disclosure. In addition, following respondent’s reasoning, it would appear that every time there is a will contest or a contract dispute, production of all wills or contracts drafted by the attorney would be discoverable from the attorney’s computer to prove the attorney’s usual course of practice. Such a request is unduly burdensome.
Billing Records Relating to the Prenuptial Agreement and the Prenuptial Agreement
The only items remaining, therefore, are respondent’s requests for access to the computer system to copy all billing records relating to the prenuptial agreement and all existing and deleted records concerning the prenuptial agreement. The court finds that such information is “material and necessary” to the prosecution of the action as such information has a bearing on the issue of the authenticity of the agreement.
Having found that such information is material and necessary, the court must now address the issue of the manner by which the discovery can be conducted and who should bear the costs of such discovery. Raw computer data or electronic docu *246 ments are discoverable (see Zubulake v UBS Warburg LLC, 217 FED 309 [SD NY 2003]; Lipco Elec. Corp. v ASG Consulting Corp., 4 Misc 3d 1019[A], 2004 NY Slip Op 50967[U] [Sup Ct, Nassau County 2004]). Computer memory has been considered a file cabinet whose contents are discoverable (Byrne v Byrne, 168 Misc 2d 321 [1996]). It is recognized that “[t]here are a variety of issues associated with the technology such as costs, work product, privilege, the use of referees to supervise burdensome disclosure, etc.” (Weinstein-Korn-Miller, CPLE Manual § 20.12). Electronic discovery raises issues not presented with traditional paper discovery since “[Retrieving computer based records or data is not the equivalent of getting the file from a file cabinet or archives” (Lipco Elec. Corp. v ASG Consulting Corp., 4 Misc 3d 1019[A], 2004 NY Slip Op 50967[U], *7 [Sup Ct, Nassau County 2004]). Moreover,
“[o]nce a paper document has been destroyed, it cannot be produced. ‘Deleted’ material is not expunged from a computer’s hard drive. ‘Deleted’ material can be retrieved by a person with sufficient computer savvy. . .. Furthermore, computer experts can allegedly determine if data has been altered and reconstruct the originally entered data” (Lipco Elec. Corp. v ASG Consulting Corp., 4 Misc 3d 1019[A], 2004 NY Slip Op 50967[U], *7 [Sup Ct, Nassau County 2004]).
The New York courts have often looked to federal cases for guidance on the issues of electronic discovery. The new federal rules concerning electronic discovery which went into effect on December 1, 2006 provide more protection for nonparties from onerous discovery. The court is mindful that neither Warren Finnell nor the Congdon law firm is a party to the action.
In the instant case, the respondent proposes making a clone of the Congdon law firm’s hard drive. It has been suggested that because e-discovery raises “inevitable conflicts,” cloning or system access should be allowed only if other alternatives are unsuccessful and only upon a showing of good cause (see Connors and Gleason, New York Practice, E-Discovery: Problems with Computer Hard-Drive “Clones,” NYLJ, July 18, 2005 at 3, cols 1, 2). The nonparty law firm argues that the use of the backup tape will provide a less invasive and less burdensome method. The court agrees that such a methodology would be less burdensome; however, the gravamen of respondent’s claim is the authenticity of the prenuptial agreement. Allegations have been made that the prenuptial agreement was somehow *247 altered. The backup tape methodology proposed by the law firm will not yield deleted or altered information. Accordingly, the court directs that a clone of the Congdon law firm’s hard drive shall be made. Nevertheless, the court declines to accept the forensics computer professional retained by respondent and declines to allocate the cost of the electronic discovery to the nonparty as has been done in certain circumstances, especially in the federal courts. The CPLR provides that the party seeking discovery should incur the costs incurred in the production of discovery material (Lipco Elec. Corp. v ASG Consulting Corp., 4 Misc 3d 1019[A], 2004 NY Slip Op 50967[U] [Sup Ct, Nassau County 2004]).
The Congdon law firm shall select a computer forensic expert to conduct the cloning process. The expert selected by the Cong-don law firm shall submit to the law firm in writing a proposal as to the cost of the cloning process. The Congdon law firm shall, within 10 days of being notified of the cost, forward a copy of the proposal to the respondent’s counsel. Respondent, within 10 days of being notified of the costs of the cloning process, shall notify the Congdon law firm in writing of whether she wishes to proceed with such electronic discovery. Respondent’s failure to so notify shall be deemed a decision to forgo the electronic discovery. If respondent chooses to engage in such discovery, respondent’s counsel, petitioners’ counsel and a representative of the law firm may be present at the location where the cloning process occurs. Hard copies of any billing or other records retrieved from the hard drive concerning the Maura prenuptial agreement shall be delivered by the computer forensics expert to the court in a sealed envelope. Within 10 days thereof, the Congdon law firm shall review the records and interpose any objections, whether based on privilege or otherwise, it may have to release the documents to counsel. The merit of any objections raised shall be determined by the court. If no objections are timely raised, hard copies of such documents shall be delivered to attorneys for both parties.