DEBORAH ETZION, Appellant-Respondent, v RAFAEL ETZION et al., Respondents-Appellants. [880 NYS2d 79]—

In an action, inter alia, for the rescission or reformation of a stipulation of settlement dated June 8, 2005, which was incorporated, but not merged, into the judgment of divorce referable to the plaintiff former wife and the defendant former husband Rafael Etzion, dated August 16, 2005, the plaintiff appeals from so much of an order of the Supreme Court, Nassau County (Marber, J.), entered January 17, 2008, as denied her motion, among other things, to compel the defendants to submit to electronic discovery, and for a preliminary injunction prohibiting the defendants from transferring certain money and assets, and the defendants cross-appeal from so much of the same order as denied their cross motion to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), and for an award of an attorney's fee.

Ordered that the order is modified, on the law, (1) by deleting the provision thereof denying that branch of the plaintiff's motion which was to compel the defendants to submit to electronic discovery and substituting therefor a provision granting that branch of the motion to the extent of allowing the plaintiff and/or her computer forensic expert access to the defendants' nonprivileged, material, and relevant electronic data regarding any possible sale of certain real property up to and including March 22, 2005, (2) by deleting the provisions thereof denying those branches of the defendants' cross motion which were pursuant to CPLR 3211 (a) (7) to dismiss the causes of action sounding in unconscionability, prima facie tort, and breach of fiduciary duty and substituting therefor provisions granting those branches of the cross motion, and (3) by deleting the provisions thereof denying those branches of the defendants' cross motion which were pursuant to CPLR 3211 (a) (1) to dismiss the causes of action sounding in mutual mistake and unilateral mistake and substituting therefor provisions granting those branches of the cross motion; as so modified, the order is affirmed insofar as appealed and cross-appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Nassau County, for further proceedings in accordance herewith.

The plaintiff Deborah Etzion and the defendant Rafael Etzion

(hereinafter the defendant) were married on October 12, 1978. The plaintiff commenced an action for a divorce and ancillary relief against the defendant on or about June 13, 2002. On March 22, 2005 the plaintiff and the defendant executed a memorandum agreement memorializing their "binding agreement with respect to [the plaintiff's] distributive share and a division of all other marital assets." This agreement (hereinafter the memorandum agreement) provided, inter alia, that the plaintiff would receive the sum of $6.1 million upon execution of a stipulation of settlement, and "the sum of $3.6 million in a note bearing interest at the rate of 6% per annum." The memorandum agreement further provided, among other things, that the plaintiff would receive "title to the marital residence and all of its contents free and clear of any judgment and/or liens." The defendant received title to several business corporations, among them, Variety Accessories, Inc. (hereinafter Variety), a business that sold ornaments. He also received title to Metro Shipping and Warehousing, Inc. (hereinafter Metro Shipping), a corporation that owned and operated the warehouse that stored Variety's stock and provided a location from which Variety's goods were shipped, and which owned the real property on the Greenpoint-Williamsburg waterfront in Brooklyn on which the warehouse was erected.

The plaintiff and the defendant subsequently entered into a stipulation of settlement dated June 8, 2005 (hereinafter the stipulation of settlement), incorporating the terms of the memorandum agreement. In the stipulation of settlement, the defendant represented that, as of the date of the execution of the memorandum agreement, he had "no active deals or pending negotiations relating to the sale or reorganization of Variety, in part or in whole, or any related entity, in part or in whole." According to the plaintiff, the parties premised their settlement negotiations, inter alia, upon a report prepared by a neutral appraiser regarding the value of the warehouse located on the Greenpoint-Williamsburg waterfront. The neutral appraiser determined that, as of March 27, 2003, the subject property (hereinafter the warehouse property) had a market value of $6,500,000. The plaintiff and the defendant were divorced pursuant to a judgment dated August 16, 2005. The judgment incorporated, but did not merge, the stipulation of settlement.

On October 6, 2005 the defendant entered into a contract for the sale of the warehouse property for the sum of $84,570,000. The closing took place on May 2, 2006. The dramatic increase in the market value of the warehouse property apparently resulted from the adoption of a comprehensive municipal land use and

waterfront plan for Greenpoint and Williamsburg, which had been announced by the New York City Department of City Planning on June 18, 2003 and received coverage in the press throughout the administrative process leading to its approval. The plan provided for, inter alia, the rezoning of the waterfront area to allow for residential development. The City formally adopted the rezoning plan on May 11, 2005, two months after the parties entered into the memorandum of agreement and one month before they entered into the stipulation of settlement. The plaintiff commenced the instant action against the defendant Variety, and Metro Shipping (hereinafter collectively the defendants), all of which were involved in the sale of the warehouse property, seeking, among other things, rescission and/or reformation of the stipulation of settlement. The plaintiff moved, inter alia, to compel the defendants to submit to unfettered electronic discovery of their personal and business computers, as well as for a preliminary injunction prohibiting them from transferring any money or assets under their ownership or control to the extent of the proceeds received from the sale of the warehouse property.

The defendants cross-moved to dismiss the complaint pursuant to CPLR 3211 (a) (1) and (7), annexing various documents to their motion papers, including the complaint, the memorandum agreement, the stipulation of settlement, excerpts from the appraisal report, and various newspaper articles and press releases. The defendants argued, inter alia, that the complaint failed to state a cause of action because information regarding the rezoning plan was in the public domain, and thus freely accessible to all parties. They further argued, among other things, that the plaintiff could have obtained an updated appraisal of the market value of the warehouse property during the matrimonial settlement negotiations, and that the defendant did not prevent her from doing so. The Supreme Court denied both the motion and the cross motion. We modify.

In order to prevail on that branch of their cross motion which was to dismiss the complaint pursuant to CPLR 3211 (a) (1), the defendants were required to demonstrate that "the documentary evidence utterly refutes plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (*Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]). Insofar as the defendants' cross motion was predicated upon CPLR 3211 (a) (7), the court is required to "accept the facts as alleged in the complaint as true, accord plaintiffs the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (*Leon*

*v Martinez,* 84 NY2d 83, 87-88 [1994]). "Whether the plaintiff can ultimately establish the allegations 'is not part of the calculus' " (*Aberbach v Biomedical Tissue Servs., Ltd.,* 48 AD3d 716, 717-718 [2008], quoting *EBC I, Inc. v Goldman, Sachs & Co.,* 5 NY3d 11, 19 [2005]).

Under this standard, the complaint in this case is sufficient to state a cause of action to recover damages arising from the defendant's alleged fraudulent misrepresentation that he had not engaged in any active deals or pending negotiations relating to the sale or reorganization of any entity related to Variety. Metro Shipping, which owned and occupied the warehouse property on which Variety conducted its operations, is unquestionably a related entity.

Since spouses stand in a fiduciary relationship to each other, agreements between them require "the utmost of good faith" (*Christian v Christian,* 42 NY2d 63, 72 [1977]; *see Barchella v Barchella,* 44 AD3d 696, 697 [2007]). Thus, if the plaintiff is ultimately able to substantiate her claim that the defendant concealed an existing agreement to sell the warehouse property, she may be able to succeed on the fraudulent misrepresentation cause of action (*see Chapin v Chapin,* 12 AD3d 550, 550-551 [2004]; *Cruciata v Cruciata,* 10 AD3d 349, 350 [2004]). Moreover, such allegations are sufficient to state a cause of action for reformation and/or rescission of the stipulation of settlement (*see Christian v Christian,* 42 NY2d 63 [1977]; *Brennan-Duffy v Duffy,* 22 AD3d 699 [2005]), as well as to impose a constructive trust on the warehouse property or the proceeds received from the sale of that property (*see Iwanow v Iwanow,* 39 AD3d 476, 477 [2007]; *Mattera v Mattera,* 125 AD2d 555, 556 [1986] ["A constructive trust is an equitable remedy which may be imposed whenever necessary to satisfy the demands of justice"]). Thus, the Supreme Court properly denied those branches of the defendants' cross motion which were to dismiss the first, second, and sixth causes of action.

However, the complaint failed to state a cause of action sounding in prima facie tort. Although the complaint contains an assertion that disinterested malevolence was the sole motivation for the defendant's conduct, the principal allegations of the complaint indicate otherwise. The complaint clearly demonstrates that financial gain was a motivation on the part of the defendant, as the value of the warehouse property was allegedly concealed so as to avoid paying the plaintiff her potential distributive share of its actual sales price, an amount that would have exceeded $30,000,000 (*see Matter of Entertainment Partners Group v Davis,* 198 AD2d 63 [1993]). Moreover, "prima

facie tort was designed to provide a remedy for intentional and malicious actions that cause harm and for which no traditional tort provides a remedy, and not to provide a 'catch all' alternative for every cause of action that cannot stand on its legs" (*Bassim v Hassett,* 184 AD2d 908, 910 [1992] [internal quotation marks omitted]). As such, the Supreme Court erred in denying that branch of the defendants' cross motion which was to dismiss the seventh cause of action for failure to state a cause of action.

Contrary to the defendants' further contentions, the complaint sufficiently states a cause of action for an award of an attorney's fee pursuant to the terms of the stipulation of settlement. The stipulation of settlement provides, in pertinent part, that "in the event either party is forced to seek aid of counsel in enforcing any rights pursuant to this Settlement Agreement, and in the event that party is successful in enforcing such right(s), the other shall reimburse him or her for any reasonable attorneys' fees necessarily incurred in enforcing such right." Accordingly, should the plaintiff ultimately prevail, she will be entitled to an award of a reasonable attorney's fee under the terms of the stipulation of settlement. Thus, the Supreme Court properly denied that branch of the defendants' cross motion which was to dismiss the eighth cause of action.

Moreover, we find no merit to the defendants' contention that the plaintiff failed to set forth sufficient details in her amended complaint to meet the pleading requirements of CPLR 3016 (b), governing claims to recover damages for, inter alia, fraudulent conduct. "While CPLR 3016 (b) requires that a cause of action sounding in fraud must be pleaded with factual detail, the specificity requirement of the statute is relaxed where, as here, it is alleged that the particular circumstances of the claimed fraud are exclusively within the defendants' knowledge" (*Pericon v Ruck,* 56 AD3d 635, 636 [2008] [citations omitted]). Thus, given the plaintiff's assertion that the particular circumstances of the defendant's misrepresentation regarding negotiations for the sale of the warehouse property were exclusively within his knowledge, the plaintiff pleaded, with sufficient particularity, that the defendant misrepresented to her that he had not engaged in any active deals or pending negotiations for the sale of that property at the time they entered into the memorandum agreement in March 2005. She further asserted, with sufficient particularity, that the defendant made those misrepresentations for the purpose of inducing her to enter into the memorandum agreement and the subsequent stipulation of settlement (*see Caprer v Nussbaum,* 36 AD3d 176, 202 [2006] ["Although an

action to recover damages for fraud may be dismissed, as the defendants suggest, for failure to plead the claim in sufficient detail to clearly inform them of the incidents complained of the standard is simply whether the allegations are set forth in sufficient detail to clearly inform a defendant with respect to the incidents complained of and this rule of pleading must not be interpreted so strictly as to prevent an otherwise valid cause of action in situations where it may be impossible to state in detail the circumstances constituting fraud''] [internal quotations marks and citations omitted]).

However, the factual allegations underpinning the third cause of action, sounding in mutual mistake, and the fourth cause of action, sounding in unilateral mistake, were refuted by the documentary evidence submitted by the defendants, and should have been dismissed (*see* CPLR 3211 [a] [1]). The plaintiff claimed that either she and the defendant mutually relied, or that she unilaterally relied, upon the representation of the market value of the warehouse property, as set forth in the report of the neutral appraiser, and that the reported market value failed to take into account the effect on the property's value of the City's proposed plan to rezone, inter alia, the Greenpoint-Williamsburg waterfront to allow for, among other things, residential development. "To vacate [a] stipulation of settlement on the ground of mutual mistake, [a party must] demonstrate that the mistake existed at the time the stipulation was entered into and that it was so substantial that the stipulation failed to represent a true meeting of the parties' minds" (*Hannigan v Hannigan,* 50 AD3d 957, 957 [2008]). Since the report of the neutral appraiser valued the warehouse property as of March 27, 2003, and the New York City Department of City Planning did not formally announce its plan to, inter alia, rezone the Greenpoint-Williamsburg waterfront until June 18, 2003, the appraiser's valuation was not faulty by virtue of its failure to account for the possible adoption of the rezoning plan.

The Supreme Court also should have granted that branch of the defendants' cross motion which was to dismiss the fifth cause of action, sounding in unconscionability, for failure to state a cause of action. Despite the plaintiff's assertions, the memorandum agreement and stipulation of settlement were not so manifestly unfair on their faces as to be unconscionable. Indeed, "an agreement will not be overturned merely because it was improvident, not the most advantageous to the dissatisfied party, or because a party had a change of heart" (*Warren v Rabinowitz,* 228 AD2d 492, 493 [1996]; *see Brennan-Duffy v Duffy,* 22 AD3d at 700; *Middleton v Middleton,* 174 AD2d 655,

656 [1991]). Here, the plaintiff was represented by a team of independent counsel, accountants, and forensic experts, and received meaningful benefits under the agreement, including, inter alia, liquid assets in the sum of approximately $10 million, and the marital home, valued at approximately $3 million (*see Morad v Morad,* 27 AD3d 626, 627 [2006]). Although the defendant here received the warehouse property, which substantially increased in value after the date on which the parties entered into the memorandum agreement, "courts will not set aside an agreement on the ground of unconscionability simply because it might have been improvident" (*Golfinopoulos v Golfinopoulos,* 144 AD2d 537, 538 [1988]; *see Cosh v Cosh,* 45 AD3d 798, 800 [2007]; *McFarland v McFarland,* 70 NY2d 916, 918 [1987]; *Kazimierski v Weiss,* 252 AD2d 481, 482 [1998]; *Middleton v Middleton,* 174 AD2d at 656; *Gaton v Gaton,* 170 AD2d 576, 577 [1991]).

Additionally, the Supreme Court should have granted that branch of the defendants' cross motion which was to dismiss the ninth cause of action alleging breach of fiduciary duty, premised on the plaintiff's claim that the defendant concealed information in violation of a duty that he had at the time of the execution of the stipulation of settlement, namely, to disclose the possibility that the New York City Council might adopt the proposed rezoning plan, and the potential impact of that plan on the market value of the warehouse property. While the defendant, as a party to the underlying matrimonial action, had a duty to make full and complete disclosure of information requested by the plaintiff in proper discovery demands, he did not have a duty arising out of the marital relationship to volunteer information freely available in the public domain regarding the possibility that the Greenpoint-Williamsburg waterfront might be rezoned for residential development, and that such a rezoning could lead to a possible increase in the market value of the warehouse property. The plaintiff chose to forgo an updated appraisal of the value of the warehouse property in favor of reliance on the neutral appraisal that was two years old when the memorandum agreement was negotiated and executed. That she subsequently determined that the defendant sold the warehouse property, after the entry of the judgment of divorce, for a sum much greater than the appraised value as of March 2003, and realized that her execution of the agreement may have been improvident, is not a basis to set aside the agreement (*see Paolino v Paolino,* 51 AD3d 886, 888 [2008]; *Cosh v Cosh,* 45 AD3d 798 [2007]; *Cappello v Cappello,* 274 AD2d 539 [2000]; *Warren v Rabinowitz,* 228 AD2d 492 [1996]).

Given the viability of, inter alia, the plaintiff's cause of action

sounding in fraud, discovery should be allowed with respect to any computer-stored data (either held in escrow or in the defendants' business or personal computers) bearing on the issue of whether the defendant misrepresented to the plaintiff, in the stipulation of settlement, that, at the time they entered into the memorandum agreement, the defendant was not engaged in any active deals or pending negotiations for the sale of the warehouse property (*see* CPLR 3101 [a]). However, as the defendants contend, discovery should be limited to nonprivileged materials that could provide evidence of the defendant's alleged misrepresentation, i.e., only those generated through March 22, 2005 (*see* CPLR 3103 [a]). Additionally, given the defendant's cooperation with electronic discovery requests in the underlying matrimonial action, resort to use of the sheriff's office to effect discovery is not necessary. We therefore remit the matter to the Supreme Court, Nassau County, to fashion an appropriate arrangement between the parties to effectuate material and necessary electronic discovery (*see Etzion v Etzion,* 7 Misc 3d 940, 943 [2005]).

The Supreme Court correctly denied that branch of the plaintiff's motion which was for a preliminary injunction prohibiting the defendants from transferring certain money and assets. "To prevail on a motion for a preliminary injunction, a movant must establish a likelihood of success on the merits, irreparable injury in the absence of an injunction, and a balance of equities in its favor" (*Gerstner v Katz,* 38 AD3d 835, 835 [2007]; *see* CPLR 6301). Here, the plaintiff failed to establish a likelihood of success on the merits. Despite her allegation that electronic computer evidence exists that will establish the defendant's alleged fraudulent misrepresentation, the evidence submitted by the parties, including the affidavit of the real estate agent who brokered the sale, makes it unclear as to whether any active deals or pending negotiations for the sale of the warehouse property existed at the time the plaintiff and the defendant executed the memorandum agreement (*see Coby Group, LLC v Hasenfeld,* 46 AD3d 593, 595 [2007]). Additionally, as the Supreme Court found, money damages would be sufficient to satisfy the plaintiff's claim. As such, she did not establish that she would suffer irreparable injury in the absence of a preliminary injunction (*see Matter of Walsh v Design Concepts,* 221 AD2d 454 [1995]), and thus failed to establish the need for a preliminary injunction.

The parties' remaining contentions are without merit. Mastro, J.P., Florio, Covello and Belen, JJ., concur.