■ DEBORAH ETZION, Appellant, v RAFAEL ETZION et al., Respondents. [29 NYS3d 422]—

In an action, inter alia, for the rescission or reformation of a stipulation of settlement dated June 8, 2005, which was incorporated, but not merged, into a judgment of divorce referable to the plaintiff former wife and the defendant former husband Rafael Etzion dated August 16, 2005, the plaintiff appeals, as limited by her brief, from so much of a judgment of the Supreme Court, Nassau County (Maron, J.), entered February 24, 2015, as, upon an order of the same court entered

October 1, 2014, granting the defendants' motion pursuant to CPLR 3211 (a) to dismiss the second, third, and fourth causes of action of the second amended complaint and denying her cross motion for summary judgment on those causes of action, inter alia, dismissed the second, third, and fourth causes of action of the second amended complaint.

Ordered that the judgment is affirmed insofar as appealed from, with costs.

As previously set forth, in part, in our decision and order on a prior appeal (*see Etzion v Etzion*, 62 AD3d 646 [2009]), the plaintiff, Deborah Etzion, and the defendant Rafael Etzion (hereinafter Rafael) were married on October 12, 1978. The plaintiff commenced an action for a divorce and ancillary relief against Rafael on or about June 13, 2002. On March 22, 2005, the plaintiff and Rafael executed a memorandum agreement memorializing their "binding agreement with respect to [the plaintiff's] distributive share and a division of all other marital assets." This agreement (hereinafter the memorandum agreement) provided, inter alia, that Rafael received title to several business corporations, among them, Variety Accessories, Inc. (hereinafter Variety), a business that sold ornaments. He also received title to Metro Shipping and Warehousing, Inc. (hereinafter Metro Shipping), a corporation that owned and operated the warehouse that stored Variety's stock and provided a location from which Variety's goods were shipped, and which owned the real property on the Greenpoint-Williamsburg waterfront in Brooklyn on which the warehouse was erected (hereinafter the subject property) (*see id.* at 648-649).

On May 25, 2005, Rafael received an offer from Branford Partners, LLC (hereinafter Branford), to purchase the subject property for the sum of $83,190,000 (hereinafter the Branford offer). Rafael did not disclose the Branford offer to the plaintiff.

The plaintiff and Rafael subsequently entered into a stipulation of settlement dated June 8, 2005 (hereinafter the stipulation of settlement), incorporating the terms of the memorandum agreement. In the stipulation of settlement, Rafael represented that, as of the date of the execution of the memorandum agreement, he had "no active deals or pending negotiations relating to the sale or reorganization of Variety, in part or in whole, or any related entity, in part or in whole" (*id.* at 649 [internal quotation marks omitted]). According to the plaintiff, the parties premised their settlement negotiations, inter alia, upon a report prepared by a neutral appraiser regarding the value of the subject property. The neutral appraiser determined that, as

of March 27, 2003, the subject property had a market value of $6,500,000. The plaintiff and Rafael were divorced pursuant to a judgment dated August 16, 2005. The judgment incorporated, but did not merge, the stipulation of settlement.

On October 6, 2005, Rafael entered into a contract for the sale of the subject property for the sum of $84,570,000. The closing took place on May 2, 2006. The dramatic increase in the market value of the subject property apparently resulted from the adoption of a comprehensive municipal land use and waterfront plan for Greenpoint and Williamsburg, which had been announced by the New York City Department of City Planning on June 18, 2003, and received coverage in the press throughout the administrative process leading to its approval. The plan provided for, inter alia, the rezoning of the waterfront area to allow for residential development. The City formally adopted the rezoning plan on May 11, 2005, two months after the parties entered into the memorandum agreement and one month before they entered into the stipulation of settlement. The plaintiff commenced the instant action against Rafael, Variety, and Metro Shipping (hereinafter collectively the defendants), all of which were involved in the sale of the subject property, seeking, among other things, rescission and/or reformation of the stipulation of settlement.

In a decision and order dated May 5, 2009, this Court, inter alia, modified an order of the Supreme Court (Marber, J.), entered January 17, 2008, so as to grant those branches of the defendants' previous motion which were pursuant to CPLR 3211 (a) to dismiss all but the first, second, sixth, and eighth causes of action of the first amended complaint (*see Etzion v Etzion*, 62 AD3d 646 [2009]). The remaining causes of action were to recover damages for fraud, for reformation and/or rescission of the stipulation of settlement, to impose a constructive trust, and for attorney's fees, respectively, based upon allegations that Rafael misrepresented in the memorandum agreement and in the stipulation of settlement that, as of the date of execution of the March 22, 2005, agreement, there were no active deals or pending negotiations relating to the sale or reorganization of Variety, in part or in whole, or any related entity, in part of in whole.

In December 2012, the defendants moved, in effect, for summary judgment dismissing the first, second, sixth, and eighth causes of action of the first amended complaint. In an order dated June 13, 2013, the Supreme Court (Maron, J.), granted the defendants' motion, and the plaintiff appealed from that order (*see Etzion v Etzion*, 138 AD3d 678 [2016] [decided herewith]).

Meanwhile, in August 2011, the plaintiff moved for leave to serve a second amended complaint. In an order entered March 6, 2012, the Supreme Court (Maron, J.) denied that motion. In a decision and order dated December 18, 2013, this Court reversed the order dated March 6, 2012, and granted the plaintiff's motion for leave to serve a second amended complaint, and deemed the proposed second amended complaint served (*see Etzion v Etzion*, 112 AD3d 782 [2013]). In the second amended complaint, the plaintiff repleaded all of the causes of action from the first amended complaint, and added three new causes of action. As relevant to this appeal, the first, second, sixth, and eighth causes of action of the first amended complaint were repleaded in the second amended complaint as the first, fifth, seventh, and eighth causes of action, respectively. The three newly pleaded causes of action in the second amended complaint were the second cause of action, alleging fraud based solely upon Rafael's alleged deliberate failure to disclose the Branford offer to the plaintiff, and the third and fourth causes of action, which alleged that Rafael breached the fiduciary duties he owed to the plaintiff arising from their marital status and as co-shareholders of Variety, respectively, by failing to disclose the Branford offer.

The defendants then moved pursuant to CPLR 3211 (a) to dismiss the second, third, and fourth causes of action in the second amended complaint. The plaintiff cross-moved for summary judgment on those causes of action. In an order entered October 1, 2014, the Supreme Court (Maron, J.) granted the defendants' motion and denied the plaintiff's cross motion. A judgment was subsequently entered, inter alia, dismissing the second, third, and fourth causes of action of the second amended complaint. The plaintiff appeals from this judgment.

The Supreme Court properly granted the defendants' motion for summary judgment dismissing the first, second, sixth, and eighth causes of action of the first amended verified complaint, which were repleaded in the second amended complaint as the first, fifth, seventh, and eighth causes of action, respectively. The defendants demonstrated their prima facie entitlement to judgment as a matter of law by submitting evidence demonstrating that Rafael did not misrepresent in the memorandum agreement or in the stipulation of settlement that, as of the date of execution of the March 22, 2005, agreement, there were no active deals or pending negotiations relating to the sale or reorganization of Variety, in part or in whole, or any related entity, in part of in whole. In opposition, the plaintiff failed to raise a triable issue of fact.

The Supreme Court also properly granted that branch of the defendants' motion which was pursuant to CPLR 3211 (a) (1) to dismiss the second cause of action of the second amended complaint, which alleged fraud based solely upon Rafael's alleged deliberate failure to disclose the Branford offer to the plaintiff. "To succeed on a motion to dismiss based upon documentary evidence pursuant to CPLR 3211 (a) (1), the documentary evidence must utterly refute the plaintiff's factual allegations, conclusively establishing a defense as a matter of law" (*Gould v Decolator*, 121 AD3d 845, 847 [2014]; *see Goshen v Mutual Life Ins. Co. of N.Y.*, 98 NY2d 314, 326 [2002]; *Leon v Martinez*, 84 NY2d 83, 88 [1994]). Here, the documentary evidence submitted by the defendants conclusively established that Rafael had no duty to disclose the Branford offer to the plaintiff. In the stipulation of settlement, which was dated June 8, 2005, Rafael represented that he had no active deals or pending negotiations relating to the sale or reorganization of Variety or any related entity as of the date of the memorandum agreement. The memorandum agreement was dated March 22, 2005, and Rafael did not receive the Branford offer until May 25, 2005. Therefore, neither the memorandum agreement nor the stipulation of settlement imposed a duty upon Rafael to disclose the Branford offer to the plaintiff (*see generally Robertson v Wells*, 95 AD3d 862 [2012]; *Introna v Huntington Learning Ctrs., Inc.*, 78 AD3d 896, 898 [2010]).

Similarly, the Supreme Court properly granted those branches of the defendants' motion which were to dismiss the third and fourth causes of action of the second amended complaint, which alleged that Rafael breached the fiduciary duties he owed to the plaintiff arising from their marital status and as co-shareholders of Variety, respectively, by failing to disclose the Branford offer, since "a fiduciary relationship ceases when parties become adversaries in litigation" (*Carr v Neilson*, 77 AD3d 877, 878 [2010]).

The plaintiff's remaining contentions either are without merit or need not be reached in light of our determination. Rivera, J.P., Leventhal, Austin and Hinds-Radix, JJ., concur.