OPINION OF THE COURT
Ira B. Warshawsky, J.
Background
Delta Financial Corporation (DFC) filed a lawsuit against defendants James Morrison, Delta Funding Residual Exchange Company, LLC, and its management company, Delta Funding Residual Management, Inc. (collectively hereinafter known as LLC) after LLC allegedly withheld certain monies allegedly due DFC. LLC thereafter commenced an action for approximately $110,000,000 for, among other things, fraud with regard to an exchange of assets between LLC and DFC in and about August 2001 (the 2001 exchange).
In or about July 2004, LLC commenced an action against the accounting firm of KPMG for approximately $110,000,000 with regard to KPMG’s alleged misconduct in connection with an audit of DFC that was related to the 2001 exchange. All matters have been consolidated before the Honorable Ira B. Warshawsky, Justice of the Supreme Court, Nassau County, Commercial Division. Familiarity with the facts is assumed and only relevant facts will be restated when necessary.
E-Discovery Dispute
Currently at issue, among numerous discovery disputes in these matters, are three categories of electronic documents, which LLC seeks discovery: (1) non-e-mail electronic documents which LLC claims were not captured by DFC’s search process; (2) e-mails which LLC claims were not captured by DFC’s 90-day backup tapes; and (3) e-mails from January 1, 1999 through *606 July 12, 2000 (collectively, the outstanding issues). Counsel for all parties and the discovery referee assigned to mediate discovery, Michael Cardello, Esq., conducted a conference to address these issues as well as other discovery issues. At the conclusion of the conference, during which the parties were able to resolve a number of outstanding discovery issues, the discovery referee directed counsel for the parties to submit briefs on the outstanding issues that remained unresolved despite the efforts made during the conference. Counsel for LLC and DEC have submitted their respective briefs on the outstanding issues.[1]
Although Michael Cardello, Esq. has been appointed to mediate discovery issues, the court has determined that a formal decision by the court is warranted. Having considered all the submissions of the parties, the court decides the outstanding issues as set forth below.
LLC’s Arguments for Further Discovery of DFC’s Electronic Data
LLC contends that it is entitled to discovery of the requested electronic documents because they are relevant to the issues in the case. LLC cites Zubulake v UBS Warburg LLC (217 FRD 309 [US Dist Ct, SD NY 2003]) (Zubulake I) for the proposition that regardless of the purpose for creating backup tapes, “[a]s long as the data is accessible, it must be produced.” (Zubulake I, 217 FRD at 322.) LLC claims that DFC’s electronic data is in an accessible form even if it resides on backup tapes.
LLC states that the restoration of DFC’s relevant backup tapes, other than the e-mails sought by LLC that predates January 1, 2000, has already been done.[2] Therefore, LLC argues that there will be limited additional costs associated with restoration process as the majority of the restoration has already been accomplished. Citing Zubulake v UBS Warburg LLC (216 FRD 280 [US Dist Ct, SD NY 2003]) (Zubulake III), LLC argues because much of the data has already been restored to accessible form, i.e., hard disks, the usual rules of discovery apply and DFC’s electronic data must be searched for relevant and responsive documents.
*607 LLC further contends that with the restoration already accomplished, the search process can take place by the application of DFC’s search terms to sift through the restored data for nonduplicative and relevant documents. LLC stated that it will initially pay the cost of this process and has offered to begin each search with a sampling, to the extent possible, to ascertain whether a full search is a worthwhile endeavor.
LLC contends that it is entitled to have the additional searches run because DFC’s prior production of electronic documents have clearly yielded responsive, highly probative documents and that LLC’s current search request seeks to capture fundamentally similar documents to the documents already produced by DFC. LLC also argues that it is neither obligated to identify specific documents missing from prior productions nor need to demonstrate that a gold mine lies within the universe of yet-to-be-searched documents to have the searches run.
DFC’s Arguments That No Further Discovery of Electronic Data is Warranted
Conversely, DFC argues that no further discovery of electronic data should be required as DFC’s backup tapes are maintained for disaster recovery purposes, not storage of electronic information for routine retrieval.[3] DFC cites the Sedona Principles for electronic document production, principle 8 (July 2005 version) (<http://www.thesedonaconference.org/content/miscFiles/ 7_05TSEpdf>) for the proposition that backup tapes maintained for disaster recovery purposes should not be searched as part of discovery unless the requesting party can demonstrate a “need and relevance that outweigh the cost, burden, and disruption of retrieving and processing the data from such sources.”
Moreover, DFC states that recent case law reflects that because of the difficulty of producing useful information from backup tapes and duplicative nature of information on backup tapes, the responding party does not have an automatic duty to produce information on all its backup tapes. In addition, DFC cites numerous cases to support its proposition that backup tapes are not subject to broad routine discovery and argues that it should not be compelled to restore and search its backup tapes in the absence of a proper showing that the backup tapes are likely to result in the production of any relevant documents *608 not already produced. DFC contends that despite the production of thousands of responsive e-mails by DFC to LLC, many of which were sent to and from Mr. Morrison, to date, LLC has failed to make any showing that any relevant e-mails were missing from the DFC production.
DFC concludes by stating that it has voluntarily searched its backup tapes for e-mails between June 12, 2000[4] and June 30, 2002 to and/or from its key employees who were involved in the valuation process which is the subject of the litigation, that the search terms used in the initial filter were quite broad, and that all responsive, nonprivileged documents from that effort have been produced to LLC. Therefore, no additional searches of DFC’s electronic documents are warranted.
Should the Court Permit Further Discovery of DFC’s Electronic Data?
While this court is not controlled by the Federal Rules of Civil Procedure, it finds them and the case law interpreting them instructive and quite useful, especially in light of the absence of CPLR guidance. This court’s reliance upon federal case law interpreting rule 34 of the Federal Rules of Civil Procedure is not without precedent. (See e.g., Weiller v New York Life Ins. Co., 6 Misc 3d 1038[A] 2005 NY Slip Op 50341[U] [Sup Ct, NY County 2005]; Ball v State of New York, 101 Misc 2d 554 [Ct Cl 1979].) In fact, “CPLR 3120 is indirectly based upon rule 34 of the Federal Rules of Civil Procedure.” (Ball at 558 n 3.) “[I]t is clear that the language of the CPLR has been interpreted by the courts of this State so as to be virtually parallel with the Federal provision.” (Ball at 560.) Recent New York State cases on disclosure of electronic records have expressly cited to the federal cases on electronic discovery. (See Haig, Commercial Litigation in New York State Courts § 23:10 [3 West’s NY Prac Series 2d ed]; see also, Weiller, supra; Etzion v Etzion, 7 Misc 3d 940 [Sup Ct, Nassau County 2005]; Travelers Indem. Co. v C.C. Controlled Combustion Insulation Co., Inc., 2003 NY Slip Op 51430[U] [Civ Ct, NY County 2003]; CreditRiskMonitor.com v Fensterstock, NYLJ, Aug. 30, 2004, at 20, col 1 [Sup Ct, Nassau County 2004, Warshawsky, J.].)
“Under Rule 34 [of the Federal Rules of Civil Procedure], a party may request discovery of any document, ‘including writings, drawings, graphs, charts, photographs, photorecords and *609 other data compilations’ ” (Zubulake v UBS Warburg LLC, 217 FRD 309 [SD NY 2003], citing Fed Rules Civ Pro rule 34 [a]). Interestingly, the Advisory Committee Note to Federal Rules of Civil Procedure rule 34 states that the “inclusive description” of the term document “accord[s] with changing technology.” (See Zubulake, 217 FRD at 317.) “It makes clear that Rule 34 applies to electronics [sic] data compilations.” (Id.; Rowe Entertainment, Inc. v William Morris Agency, Inc., 205 FRD 421 [US Dist Ct, SD NY 2002].) Therefore, “[electronic documents are no less subject to disclosure than paper records.” (Rowe Entertainment, Inc., 205 FRD at 428.) This is true not only of electronic documents that are currently in use, but also of documents that may have been deleted and now reside only on backup tapes. (See Zubulake, 217 FRD at 317, citing Antioch Co. v Scrapbook Borders, Inc., 210 FRD 645, 652 [US Dist Ct, Minn 2002] [it is a well-accepted proposition that deleted computer files whether they may be e-mails or otherwise are discoverable].)
Therefore, LLC would be entitled to discovery of the requested documents if they were relevant to the issues in the action. However, the caveat to this principle is that the demands for additional searches of electronic documents are not without limitation as the request for additional searches must also be reasonably likely to lead to the discovery of relevant evidence. In other words, a demanding party must have some basis that is not pure conjecture, for its assertion that additional searches may lead to the discovery of relevant documents.
LLC’s Request to Search Additional Non-E-Mail Electronic Documents of DFC
LLC claims that DFC performed a substandard search for non-e-mail electronic documents, and therefore, there are documents which were not captured by DFC search process. Thus, LLC is requesting that the restored data[5] from DFC’s non-email backup tapes be searched and DFC’s search terms applied, so to allow the discovery of any nonduplicative, responsive documents. LLC argues that the basis for the requested search is DFC’s purported shortcomings with regard to: (1) its purported failure to issue a proper litigation hold, and (2) DFC’s purported failure, in response to LLC’s document request, to coordinate *610 and organize a comprehensive search, supervised by outside counsel, of non-e-mail electronic documents. LLC argues that these deficiencies require that additional searches be permitted to discover the full universe of relevant documents. Specifically, LLC argues that DFC’s outside counsel, as of June 24, 2005, had not issued or overseen the dissemination of a written “litigation hold” for potential relevant documents. LLC also claims that two witnesses from DFC, Dawn Ceccarini and Eric Schencman, DFC’s director of information technology since April 2005, testified that they were unaware of any written or oral litigation hold that they were directed to observe with regard to this present litigation or disputes that reasonably would have been anticipated to lead to litigation.
In addition, LLC alleges that DFC’s collection of relevant documents that existed on the servers as of the commencement of the litigation was deficient. LLC argues that DFC collected non-e-mail documents in late 2003 by asking individuals likely to have responsive documents in hard copy or electronic form to review their records. LLC claims that outside counsel apparently played no role in this process as the collection was coordinated by Ms. Ceccarini and overseen by Marc Miller, a named defendant in this action. LLC further states that search terms were not used and DFC has not even suggested there was a quality control process or a set of guidelines in place that would assure the completeness or the consistency of the process. LLC concludes by stating that in light of DFC’s lack of retention policy and manifestly unreliable collection process, additional searches for non-e-mail documents is necessary.
On the other hand, counsel for DFC argues that DFC has searched all relevant servers for responsive documents so there is no need to go to the extraordinary step of searching backup tapes for other kinds of documents. DFC further argues that because LLC has failed to make any showing that any documents are, in fact, missing from the production already produced, LLC should not be permitted to conduct additional searches.
DFC states that its policy with regard to company records, i.e., electronic non-e-mail documents, is that the records are never routinely deleted. Rather, DFC’s policy is to maintain documents, other than e-mails, on shared servers, which have already been searched for relevant documents in response to LLC’s document demands.
Counsel for DFC contends that a search of backup tapes should only be resorted to in the event that the requesting party *611 can demonstrate a need in relevance to outweigh the costly and time-consuming burden of producing electronic documents from disaster recovery tapes. DFC claims that the LLC has already obtained tens of thousands of documents from DFC and has made no showing that there are any gaps in the production or other reasons to believe that significant records have yet to be produced. DFC, therefore, argues that under the circumstances, there is no basis for ordering further searches for non-e-mail documents.
Court’s Ruling on Additional Searches of DFC’s Non-E-Mail Documents
Applying the principles of Zubulake I to the facts of this case, and in particular, to LLC’s request for a search of restored backup tapes for non-e-mail electronic documents not captured by DFC, the best solution to this issue is set forth in McPeek v Ashcroft (202 FRD 31, 34-35 [US Dist Ct, DC Dist 2001]), as cited by Judge Scheindlin in Zubulake I (at 323-324), which states:
“Given the complicated questions presented [and] the clash of policies ... I have decided to take small steps and perform, as it were, a test run. Accordingly, I will order DOJ [Department of Justice] to perform a backup restoration of the e-mails attributable to Diegelman’s computer during the period of July 1, 1998 to July 1, 1999 .... The DOJ will have to carefully document the time and money spent in doing the search. It will then have to search in the restored e-mails for any document responsive to any of the plaintiff’s request for production of documents. Upon the completion of the search, the DOJ will then file a comprehensive, sworn certification of the time and money spent and the results of the search. Once it does, I will permit the parties an opportunity to argue why the results and the expenses do or do not justify any further search.”
Although not binding precedent, the court is in agreement with the logic in Zubulake I. Thus, the court directs the responding party, DFC, to search and produce responsive documents from a small sample of the restored data of non-e-mail documents. LLC will be permitted to choose a total of four months of restored data for the search process. Counsel for LLC shall notify counsel for DFC which particular months of restored data it wants searched for relevant and responsive documents. After DFC has searched the hard drives for the months chosen *612 by LLC for responsive documents, applied a deduplication process and reviewed any relevant documents for privilege, DFC shall produce relevant, nonprivileged documents.
Because the court is not entirely convinced that relevant and responsive documents will be found, LLC will be initially responsible for 100% of the costs and expenses of the search process and deduplication process, as well as attorneys’ fees and costs for the privilege review process. In addition, counsel for DFC shall prepare an affidavit detailing the results of its search, which among other things, shall include the number of responsive documents found and the costs and expenses associated with the processes including but not limited to attorneys’ fees for privilege review. This affidavit will assist the court in determining whether a full search is necessary and whether further cost shifting is warranted.
It should be noted that if it is found from the sampling of restored data that a de minimis number of documents have been found that are relevant and responsive to the demands by LLC, DFC will be permitted to make an application to the court for LLC to reimburse DFC for an additional 10% of all of the costs and expenses to compensate DFC for its 10% stake in the LLC. As we all know, of every dollar that is spent by LLC in this action, 100 is arguably coming from the pockets of DFC as a 10% stakeholder in LLC.
LLC’s Request to Search E-Mails That LLC Claims Were Not Captured By DFC’s 90-Day Backup Tape Search
According to LLC, DFC did not search all monthly e-mail backup tapes for the period of July 12, 2000 through June 30, 2002. Instead, LLC claims that DFC searched a selection of tapes made approximately 90 days apart. LLC alleges that DFC’s approach falls short because it failed to search for all accessible data. LLC argues that this approach did not capture any e-mails that were saved on monthly backup tapes not searched by DFC but then double-deleted before the creation of the backup tapes subject to DFC’s search, i.e., the 90-day tapes. LLC further states that given that two of the tapes not searched by DFC were created in or about May 1, 2001 and July 2, 2001, respectively — periods in time containing the analysis and representations leading up to the 2001 exchange — it is important for searches be conducted for double-deleted documents. Moreover, LLC asserts that because the backup tapes at issue have already been restored, all that would be required would be for a technical consultant, at LLC’s expense in the first instance, to *613 run DFC’s search terms through the restored data, and then run a deduplication process to remove documents already produced by DFC.
On the other hand, DFC claims that there is no need for a review of monthly tapes as DFC has already searched every day between July 12, 2000 and June 30, 2002 for responsive e-mails. DFC explains that e-mails ordinarily remain on DFC’s computer system for 90 days. Therefore, when backup tapes are made which are less than 90 days apart, they will contain duplicative e-mails. Thus, a search of any monthly interim tape will likely contain virtually only information that is duplicative of the prior and subsequent 90-day tape.
DFC argues that for any nonduplicative documents to be on interim tapes, i.e., monthly backup tapes, relevant documents would have to have been affirmatively deleted from the parties’ “In Box” between when the 90-day tapes were run. Because backup tapes also backup individuals’ “Trash” folders, the relevant documents would have to have been further affirmatively deleted from the “Trash” folders. DFC further claims that even if an e-mail was affirmatively deleted from both places, i.e., “In Box” and “Trash,” it is still not going to exist on an interim monthly backup tape unless it existed before the interim backup tape was run but then was affirmatively deleted in both places before the next 90-day backup tape was run. DFC contends that LLC has made no showing that any of these three seemingly unlikely events occurred, much less than all of them occurring in a rare combination that would leave a relevant e-mail on a backup tape that has not already been searched.
The Court’s Ruling on LLC’s Request to Search Monthly Backup Tapes
Although the court is mindful that there is a theoretic possibility that relevant information may exist on a monthly backup tape that was not captured on a 90-day tape, it is not enough to justify a full search of all the monthly backup tapes. However, the proximity of the two months that LLC specifically mentions, namely, May 1, 2001 and July 2, 2001, raise the odds that there is a possibility that relevant information may be contained on those monthly tapes that were not contained on the 90-day tapes which were searched by DFC. However, those odds are not raised very high because a certain set of events, as discussed above, must occur before any relevant documents will be found on the monthly tapes that are not already on the 90-day tapes. In fact, LLC’s supporting papers do not even set forth any show *614 ing that there are any missing e-mails from the production by DEC.
However, given the time frame of the two months that LLC specifically requests the restored data to be searched, May 1, 2001 and July 2, 2001 and its proximity to the 2001 exchange, the court directs a sample search of these two months only, applying DEC’S search terms to the restored data, and a deduplication process to take place. After the search terms are run and the deduplication process has occurred, DEC shall review all relevant documents for privilege. After the review process has occurred, counsel for DEC shall prepare an affidavit detailing the results of its search, i.e., the number of responsive documents found from the restored data and the costs and expenses associated with the process, including but not limited to attorney fees. The affidavit will assist the court in determining whether a full search of restored data is necessary and whether further cost-shifting is warranted. All other requests for a review and search of restored data with regard to the period between July 12, 2000 and June 30, 2002 are hereby denied at this time.
Once again, because the court is not entirely convinced that relevant documents will be found, LLC shall initially bear 100% of the expense of the running of the DEC search terms, the deduplication process, as well as the attorneys’ fees and costs incurred by DEC in its review for privilege. As stated above, if, in fact, it is determined after the running of the search terms and deduplication process that there is a de minimis amount of documents found that have not already been produced, DEC shall be permitted to make an application to the court for LLC to reimburse DEC an additional 10% of the overall costs and expenses to reflect its 10% stake in the LLC as similarly set forth above.
LLC Request to Search for E-Mails from January 1, 1999 through July 12, 2000
LLC requests that DEC apply terms to search its e-mails dating from January 1, 1999 through July 12, 2000 to derive any potentially responsive documents for review. LLC argues that its initial document request asks for responsive documents from January 1, 1999. LLC contends that DEC’S response to the document request stated that, as a general matter, it did not object to the starting date for the search period. However, LLC claims that DEC searched for non-email documents and hard copies dating back from January 1, *615 1999 but only searched for responsive e-mails beginning on or about July 12, 2000, a date that LLC states has no particular bearing on this action.
LLC argues that the 1999 time frame is important because the reasons for the 2001 exchange were neither isolated events nor were unique to 2001. Rather, LLC contends that the 2001 exchange was the end point of steps that DFC had been attempting since the beginning of 1999 in response not only to financial difficulties that existed in 1999 and thereafter, but in response to conditions that affected its excess cash flow certificates since 1999.
LLC states that events occurring in the course of this continuum of time are central to the issues in the litigation, i.e., how far and at what time did the certificates decline in value; what did DFC know regarding critical economical factors that effected the evaluation of its certificates; when did it know that information; and what did DFC do or not do in response to that information. LLC alleges that DFC has categorically refused to search for the e-mails and attachments from the period preceding July 12, 2000. LLC claims that the universe of pre-July 12, 2000 e-mails is untapped and would, if searched, be a source of responsive and relevant documents.
However, DFC alleges that the time period covered by DFC’s searches was reasonable in that it searched backup tapes for e-mails between July 12, 2000 and June 30, 2002. DFC argues that the 2001 exchange occurred in August 2001 and any relevant projections were made as of March 2001, and, therefore, searching for documents prior to July 12, 2000 would not have produced any relevant documents that were responsive to the demands set forth by LLC.
DFC argues that counsel for LLC is confusing the issues of underwriting with the issues of good faith projections. DFC states that whether or not DFC or any lender has sufficiently underwritten its loans does not bear on whether or not it made good faith projections or, as is at issue in this case, whether or not it knowingly lied about projected performances. DFC contends that it does not oppose or resist reasonable discovery about projections or the basis for those projections but it does oppose further unrestricted and seemingly unending discovery about the origination of those loans not implicating the later projections. Therefore, DFC argues that LLC is not entitled to discovery of backup tapes from January 1, 1999 through July 12, 2000 because there is no *616 reasonable likelihood that the relevant documents would be found on those tapes.
The Court’s Ruling on LLC’s Request to Search for E-Mails of DFC from January 1, 1999 through July 12, 2000
The court finds that because DFC has produced responsive documentation as far back as January 1, 1999, it is possible that responsive e-mails may be found on the backup tapes from that time frame.[6] Therefore, the court directs a sampling of three monthly backup tapes from the period of January 1, 1999 through December 31, 1999 to be chosen by LLC. After the three backup tapes are restored, a search will be conducted for responsive documents based upon the application of DFC’s search terms, a deduplication process shall be run and a review for privilege performed. In addition, LLC shall choose two months of restored data from January 1, 2000 through July 12, 2000 to be searched, deduplicated, and reviewed for privilege.
Initially, LLC shall bear 100% of the cost of this process, which includes the costs and expenses of restoration, search, deduplication processes and attorneys’ fees and costs with regard to the review of the documents for privilege. At the conclusion of the process, DFC shall prepare an affidavit detailing the results of the search conducted, i.e., the number of responsive documents found along with the costs and expenses including but not limited to attorneys’ fees associated with the restoration, search, deduplication, and review processes. This will allow the court to determine if a full search is necessary and if further cost-shifting is warranted as well.
Conclusion
In summary, the court orders that: (1) with regard to the LLC’s request for additional searches of DFC’s non-e-mail documents, LLC will be permitted to choose a total of four months of restored data which DFC is directed to search, apply its search terms, and produce responsive, nonprivileged documents. DFC shall prepare an affidavit detailing the results of its searches, as well as the time and money spent on the process. (2) With regard to the search of DFC’s monthly backup tapes, DFC shall search the restored data for May 1, 2001 and July 1, 2001 and produce all responsive, nonprivileged documents. DFC shall prepare an affidavit detailing the results of its search, as *617 well as the time and money spent on the process. All other requests for additional searches of the monthly backup tapes whether restored or otherwise are denied at this time. (3) With regard to LLC’s request to search for responsive e-mails from January 1, 1999 through July 12, 2000, DFC shall restore, search for, and produce responsive, nonprivileged documents for a total of three monthly backup tapes from 1999 selected by LLC. In addition, LLC shall choose two months of restored data from January 1, 2000 through July 12, 2000 that shall be searched by DFC and relevant, nonprivileged documents produced. DFC shall then prepare an affidavit detailing the results, as well as the time and money spent on the process. (4) It is further ordered that LLC shall initially bear 100% of the costs of the restoration, search, deduplication, and review processes for all its requests. After the court’s review of the affidavits submitted by DFC, the court will determine if more expansive searches are necessary and if further cost-shifting is warranted.

. Counsel for KPMG did not submit a brief to Mr. Cardello as the outstanding issues involved a discovery dispute between DFC and LLC, and did not involve KPMG.

. It is the court’s understanding that DFC’s backup tapes covering e-mails and non-e-mail documents dating back to January 2000 have been restored and transferred to hard drive.

. As stated earlier, according to LLC, the relevant backup tapes of DFC, other than e-mails that predate January 1, 2000, have already been restored and the information resides on hard drives that are in the possession of the discovery referee, Michael Cardello, Esq.

. Notwithstanding the citation to June 12, 2000 as the start date for the search, it is the court’s understanding that the correct date is, in fact, July 12, 2000.

. As stated earlier, according to LLC, the relevant backup tapes of DFC, other than e-mails that predate January 1, 2000, have already been restored and the information resides on hard drives that are in the possession of the discovery referee, Michael Cardello, Esq.

. It is the court’s understanding that only e-mails from January 1, 2000 through July 12, 2000 have been restored and e-mails from 1999 have not been restored and still remain on backup tapes.