OPINION OF THE COURT
Eileen A. Rakower, J.
Plaintiff, T.A. Ahern Contractors Corp., brings this action for breach of contract, quantum meruit, and unjust enrichment in connection with a public improvement construction project known as Jacobi Medical Center Modernization Program-Phase I (the project or project), located in the Bronx, New York. Ahern alleges that, pursuant to the parties’ contract, Ahern was to construct a portion of the project over 22 months, beginning in April of 2002, and that various breaches of contract by defendant, the Dormitory Authority of the State of New York (DASNY), delayed Ahern’s completion of the project, causing Ahern to incur damages.
Presently before the court are motions by both Ahern and DASNY for orders pursuant to CPLR 3124, compelling one another to produce electronic and other discovery relating to the project.
With respect to Ahern’s motion, Ahern seeks the production of archived e-mails from DASNY employees relating to the project and other electronic documents. Ahern asserts that project-related e-mails to and/or from DASNY employees will demonstrate that DASNY caused Ahern to be delayed in its performance of the contract.[1] In support of its motion, Ahern submits an amended notice of motion; affirmation of Robert J. Fryman in support and affirmation of good faith, with copies of the pleadings; Ahern’s documents requests and DASNY’s objections and responses; copies of compliance conference orders; and letters from Ahern and DASNY regarding the present discovery dispute annexed as exhibits. DASNY has submitted an affirmation in opposition to Ahern’s motion to compel, annexing as exhibits correspondence between counsel for Ahern and DASNY regarding the present discovery dispute; DASNY’s privilege log; and DASNY’s own document request to Ahern. In addition, DASNY has annexed affidavits from Leigh Favitta, Director of Information Systems for DASNY; and Heidi B. *418 Grygiel, Esq., Evidence Acquisition Director of the Office of the Chief Information Officer for the New York City Law Department, counsel for DASNY. Ahern submitted a reply affirmation in further support of its motion.
In response to Ahern’s request for electronic data, DASNY has identified 27 DASNY employees whose e-mail accounts are likely to contain information relevant to the project. However, according to DASNY, the great majority of these employees did not create project-specific folders in their e-mail accounts, and thus it was necessary to collect these individuals’ entire mailboxes (i.e., their in-boxes, sent items, and any other folders within the mailbox). This amounted to approximately 35 gigabytes (GB) of electronic data in the form of e-mails and attached documents. DASNY estimates that, using a standard industry conversion rate of pages per GB, DASNY has collected over 2.5 million pages from the 27 e-mail accounts.
Further, the e-mail service utilized by DASNY employees— Microsoft Outlook — does not allow for mailbox-wide searches which could potentially locate project-specific e-mails and/or documents. Instead, each individual e-mail and its attachment^), if any, would have to be accessed and reviewed for relevant and/or privileged material. Accordingly, DASNY has taken the position that it is necessary to hire an electronic discovery vendor which has the capability of running complex search strings through every mailbox and its attachments simultaneously to retrieve project-related data. DASNY contends that the retention of discovery vendors is a typical practice in cases where there is a substantial volume of electronic data from which discovery is sought by a litigant. Counsel for DASNY has communicated to counsel for Ahern both personally and in writing that it is willing to hire a vendor to perform this search and produce all responsive data upon confirmation that Ahern is willing to bear the expenses of hiring the vendor, estimated to be approximately $35,000 (or $1,000/GB).
Ahern takes the position that it should not have to pay the expenses of retrieving the project-related data from the 27 DASNY employees’ mailboxes, and that DASNY impermissibly seeks to foist the expense of reviewing its own electronic data upon Ahern. Accordingly, Ahern argues that DASNY should bear the cost of hiring the electronic discovery vendor; or alternatively, that DASNY should be compelled to provide the contents of the entire mailboxes of the 27 DASNY employees subject to a stipulation of confidentiality, and Ahern itself will *419 undertake the search for project-related e-mails and/or attachments.[2]
DASNY, in its own motion, seeks an order pursuant to CPLR 3124 compelling Ahern to produce all relevant e-mails and other electronic documents in its possession pertaining to the project; as well as document discovery in the form of the general ledgers of Ahern and its affiliate, Ahern Painting Contractors, Inc., financial statements for the years encompassing Ahern’s contract performance, and copies of cancelled checks which support Ahern’s claimed expenses. DASNY in support of its motion has submitted a notice of motion; an affirmation in support of DASNY’s motion and affirmation of good faith; and an affidavit of Richard Weller, CPA for DASNY. DASNY also submits copies of the pleadings, Ahern’s summary of claim, DASNY’s first notice for discovery and inspection and Ahern’s response, several letters between counsel regarding the discovery issues addressed in the instant motion, compliance conference orders, and a copy of general conditions of the project contract as exhibits. In opposition to DASNY’s motion, Ahern has submitted an affirmation of Robert J. Fryman, which has annexed as exhibits Ahern’s own motion to compel and reply affirmation in support; a printout cataloguing 1,292 pages of financial records already produced by Ahern; Ahern’s response and objections to DASNY’s first notice for discovery and inspection; and prior correspondence between counsel for DASNY and Ahern regarding the discovery issues at issue in the instant motion. DASNY has submitted a reply affirmation in further support of its motion.
With respect to DASNY’s demands for financial records from Ahern, DASNY argues that, although Ahern has produced 1,292 pages of financial records related to the project, it is also entitled to Ahern’s audited and unaudited financial statements, the general ledgers, and checks paid by Ahern for expenses incurred on the project. DASNY contends that this information is essential to verifying the accuracy and/or veracity of the damages claimed by Ahern. Further, DASNY claims that access to Ahern’s general ledger and financial statements is required in order to ascertain Ahern’s expenses representing home office overhead, since Ahern’s accounting system did not allocate overhead expenses on a job-by-job basis, and thus Ahern’s overhead relating specifically to the project is not documented in the project-specific job cost ledger.
*420 DASNY concedes that its CPA, Richard Weller, was previously provided with access to the financial records of Ahern and Ahern Painting Contractors, Inc.; and that he conducted a three-week audit of these records in March 2006. Mr. Weller also conducted a review of Ahern and Ahern Painting’s records for a period of three days in November 2007. In short, the parties agree that DASNY has had the opportunity to review and audit Ahern’s financial statements for the years 2003 through 2006. However, DASNY claims that Mr. Weller had not copied most of the records, and that records which Mr. Weller had retained had been marked up for auditing purposes.
In opposition to DASNY’s motion to compel Ahern’s production of financial records and the general ledgers, Ahern contends that the general ledgers and financial statements will provide no further details with respect to alleged costs related to the project. Accordingly, Ahern asserts that the general ledgers and company-wide financial statements sought by DASNY are irrelevant to this action.
With respect to DASNY’s motion to compel Ahern’s production of project-related e-mails and other electronic data, DASNY alleges that, despite numerous requests to counsel for Ahern to identify and/or produce all relevant electronic discovery, Ahern has failed to provide DASNY with any information pertaining to project-related electronic data in Ahern’s custody.
In response, Ahern contends that, in discussions between counsel, Ahern has expressed its willingness to provide DASNY with electronic discovery on the same terms and conditions as DASNY’s production of electronic discovery, the subject of Ahern’s motion to compel.
CPLR 3101 (a) generally provides that “[tjhere shall be full disclosure of all matter material and necessary in the prosecution or defense of an action.” The Court of Appeals has held that the term “material and necessary” is to be given a liberal interpretation in favor of the disclosure of “any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity,” and that “[t]he test is one of usefulness and reason” (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968]). However, a party is not required to respond to discovery demands which are “palpably improper.” A demand is palpably improper if it seeks information which is irrelevant or confidential, or is over-broad and unduly burdensome (Gilman & Ciocia, Inc. v Walsh, 45 AD3d 531 [2d Dept 2007]).
*421 Turning first to DASNY’s demands for the general ledgers, financial statements, and copies of cancelled checks, the court finds that DASNY is entitled to the general ledgers and cancelled checks, but not to copies of Ahern’s financial statements. DASNY has stated that the primary justification for disclosure of the general ledgers is that home office overhead costs claimed by Ahern cannot be verified by reference to the project-specific records provided by Ahern. Ahern does not deny DASNY’s assertion or point to any specific documents provided by Ahern which contain this information. DASNY further states that the general ledgers are required to verify that the costs claimed on Ahern’s project-specific records are not duplicative or allocated from other jobs.
However, DASNY fails to establish how disclosure of Ahern’s financial statements would yield any relevant material not disclosed through the production of the general ledgers. DASNY cites the same justifications for disclosure of the financial statements as it does for disclosure of the general ledgers (ascertaining project-specific home office overhead and verifying the accuracy of claimed expenses). The only additional use of the financial statements would be to verify that the information contained on the general ledgers themselves is accurate. This purported justification, without more, is too speculative to justify the release of Ahern’s financial statements. DASNY, through its CPA, has already had the opportunity to audit Ahern’s financial statements for the years 2003 through 2006, and has not reported any discrepancies or issues with Ahern’s bookkeeping practices. In sum, the record before the court indicates that the general ledgers, in combination with documents already produced by Ahern, will permit DASNY to adequately and thoroughly assess and verify or contest Ahern’s claims with respect to the project (see Penn York Constr. Corp. v State of New York, 92 AD2d 1086 [3d Dept 1983] [in construction contract dispute, Court of Claims properly granted defendant’s motion to compel with respect to claimant’s general ledger, and properly denied defendant’s motion with respect to claimant’s financial statements]).
Turning now to the issue of electronic discovery, New York courts have held that raw computer data or electronic documents are discoverable (see Lipco Elec. Corp. v ASG Consulting Corp., 4 Misc 3d 1019[A], 2004 NY Slip Op 50967[U], *7 [Sup Ct, Nassau County 2004]). At issue in Ahern’s motion to *422 compel is not whether the sought-after electronic data is discoverable (DASNY concedes that Ahern is entitled to project-related e-mails and other electronic data), but rather which party should bear the cost of retrieving and producing it.
The court agrees with DASNY’s contention that the hiring of an electronic vendor to cull e-mails and other documents responsive to Ahern’s demands should be considered a component of the production process. Based upon the Favitta and Grygiel affidavits, annexed to DASNY’s opposition papers, the method set forth by DASNY is the least burdensome way, if not the only practicable one, to respond to Ahern’s demands for electronic discovery. DASNY should not be compelled to turn over potentially confidential and/or privileged material, even if pursuant to a confidentiality stipulation (see Lipco, 2004 NY Slip Op 50967[U], *8 [“The party from who(m) electronic discovery is sought should be required to produce material stored on a computer so long as the party being asked to produce the material is protected from undue burden and expense and privileged material is protected” (citation omitted)]). In finding the hiring of a vendor to be a necessary component of the production process, it is significant, in this court’s view, that Ahern does not allege that DASNY has maintained its electronic data in a negligent or otherwise improper fashion which has added in any way to the expense of retrieving the responsive data.
Ahern argues that the costs of hiring an electronic discovery vendor to cull the electronic data which is responsive to its discovery demands should be subject to the cost-shifting model utilized by the United States District Court for the Southern District of New York in Zubulake v UBS Warburg LLC (217 FRD 309 [SD NY 2003]). While it is true that New York courts have received guidance from the federal courts on the issue of electronic discovery (see Delta Fin. Corp. v Morrison, 13 Misc 3d 604, 608-609 [Sup Ct, Nassau County 2006] [citing cases]), the courts have noted that a clear distinction exists between the CPLR and the Federal Rules of Civil Procedure with respect to the cost of producing disclosure (see Lipco, 2004 NY Slip Op 50967[U], *8 [holding that, while the cost-shifting model exists in federal court since the federal rules “start( ) (with the) presumption that . . . the party responding to the discovery demand bears the cost of complying with discovery demands . . . cost shifting *423 of electronic discovery is not an issue in New York since the courts have held that, under the CPLR, the party seeking discovery should incur the costs incurred in the production of discovery material” (citing cases)]; see also Etzion v Etzion, 7 Misc 3d 940, 945 [Sup Ct, Nassau County 2005]; Matter of Maura, 17 Misc 3d 237, 246 [Sur Ct, Nassau County 2007]).
As noted by Justice Austin in Lipco, the court-ordered sharing or shifting of the costs of producing electronic discovery in the federal system is based upon the fact that, in federal court, “the presumption is that the responding party must bear the expense of complying with discovery requests” (Zubulake at 317, quoting Oppenheimer Fund, Inc. v Sanders, 437 US 340, 358 [1978]). This presumption notwithstanding, rule 26 (c) of the Federal Rules of Civil Procedure provides federal courts with discretion to grant orders protecting responding parties from “undue burden or expense . . . including orders conditioning discovery on the requesting party’s payment of the costs of discovery” (Zubulake at 316, quoting Oppenheimer Fund at 358 [internal quotation marks omitted]). Applying these principles to the evolving issue of electronic discovery, the Zubulake court held that cost shifting “should be considered only when electronic discovery imposes an ‘undue burden or expense’ on the responding party,” and that the burden or expense is undue when it “outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties’ resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues” (id. at 318, quoting Fed Rules Civ Pro rule 26).
Justice Austin rightly found that, given the New York rule that the cost of producing discovery falls upon the party seeking discovery rather than the responding party, the concerns prompting allocation of production costs in federal court are not implicated in state court. Unlike a party seeking electronic discovery in federal court, a state court litigant has a strong incentive to formulate its discovery requests in a manner as minimally burdensome as possible, since the litigant will bear the costs of production. In other words, without cost shifting or sharing in federal court, the potential would exist for litigants to formulate overly broad discovery requests which have the effect — whether intended or otherwise — of placing unnecessary and oppressive (even prohibitive) costs upon an opponent (see Zubulake at 317-318).
*424 Although one Supreme Court decision entertained the possibility of cost shifting at a later juncture (see Delta, 13 Misc 3d at 613-614), and the court is mindful of the fact that electronic discovery is a new and presently-evolving body of law unanticipated at the time the CPLR was drafted (see Lipco, 2004 NY Slip Op 50967[U], *6), it is the opinion of this court that it is not empowered — by statute or by case law — to overturn the well-settled rule in New York State that the party seeking discovery bear the cost incurred in its production (see Waltzer v Tradescape & Co., L.L.C., 31 AD3d 302, 304 [1st Dept 2006]). Accordingly, the court will not order the production of project-related e-mails and/or electronic documents in the Outlook mailboxes of the 27 DASNY employees until such time as Ahern communicates that it is willing to bear the costs incurred for their production (see Lipco, 2004 NY Slip Op 50967[U], *9), subject to any possible reallocation of costs at trial (see Etzion, 7 Misc 3d at 945).[3]
As for DASNY’s motion to compel the production of electronic discovery from Ahern, Ahern shall advise DASNY as to the costs of producing its electronic data responsive to DASNY’s demands. Upon DASNY’s communication of its willingness to pay the costs of production, Ahern shall provide DASNY with its electronic discovery.
Wherefore, it is hereby ordered that plaintiff’s motion to compel is denied, to the extent that it seeks production of responsive electronic data from the mailboxes of the 27 identified DASNY employees at DASNY’s expense; and it is further ordered that, upon Ahern’s communication of its willingness to bear the costs of production of the electronic data from the mailboxes of the DASNY employees, subject to any possible reallocation of costs at trial, DASNY shall produce same; and it is further ordered that, upon DASNY’s communication of its willingness to bear the costs of production of responsive electronic data from Ahern, subject to any possible reallocation of costs at trial, Ahern shall produce same; and it is further ordered that Ahern produce Ahern and Ahern Painting’s general ledgers for the years 2002 through 2006, and copies of all checks demonstrating costs incurred from the project; and it is *425 further ordered that defendant’s motion to compel is denied, to the extent that it seeks the production of Ahern’s financial statements.
All other relief requested is denied.

. Ahern had also moved to compel production of DASNY’s privilege log and other outstanding document discovery. However, these issues appear to have been resolved subsequent to the initial filing of Ahern’s moving papers. Accordingly, this relief is denied as moot.

. Ahern also sought production of DASNY’s backup tapes in its initial moving papers, but indicated in a compliance conference on March 10, 2009 that it was withdrawing this request.

. While the court declines to engage in a cost-shifting or cost-sharing analysis, the court notes that the third Zubulake factor — the total cost of production, compared to the amount in controversy — would weigh heavily against Ahern, since the amount in controversy in this matter exceeds $14,000,000, while the disputed costs in the present motion total approximately $35,000.