OPINION OF THE COURT
Barbara Howe, J.
Decedent died at age 79 on September 22, 2012, survived by his wife, Mary Jane Nunz, and six children from a prior marriage: William Nunz, Jr. (hereafter, William Jr.), Michael Nunz, Kathleen Danheiser, Tambra Nunz, Wendy Fecher, and Deborah Benedict. His will, dated August 17, 2012, was offered for probate on October 18, 2012 by his nominated executrix; Mary Jane. After payment of debts and administration expenses, the will leaves the entire residuary estate to Mary Jane.
Preliminary letters testamentary were issued to Mary Jane on November 7, 2012, and a citation was issued to all of decedent’s children. Waivers consenting to probate of the will and to the appointment of Mary Jane as fiduciary were executed and filed by Kathleen, Tambra, Michael, and William Jr., but, on the citation return date, Wendy and Deborah requested an SCPA 1404 hearing.
The witnesses to decedent’s will, Keith D. Perla, Esq. (hereafter, Perla)[1] and Mary Perla, were examined on January 30, 2013. Deborah[2] filed objections on March 28, 2013, and Wendy did so on April 4, 2013. Objections were also filed by Tambra, Michael, and Kathleen on April 15, 2013, notwithstanding that they had previously signed waivers and consents to probate of the will and also that they have never moved for permission to withdraw those waivers and consents.
On March 28, 2013, William Jr. filed an application to withdraw his waiver and consent. As an exhibit to his motion papers, he attached proposed objections to probate, one of which was that the will in question “is not genuine.” The estate cross-moved for summary judgment dismissing all objections and admitting the will to probate. By order dated July 12, 2013, the estate’s motion was denied in all respects, and William Jr.’s motion to withdraw his waiver and consent was *485 granted. A schedule was then set for discovery by the parties, and that has been ongoing since.
During discovery, a subpoena duces tecum dated September 9, 2014 was served upon Perla by attorney Michael O. Morse, Esq.,[3] seeking production of documents and notes relating to the preparation of decedent’s will. Perla responded by producing his handwritten notes from a July 10, 2012 meeting with decedent.
On May 12, 2015, at Morse’s request, Perla signed an affidavit stating that he had “prepared the will using a Microsoft Word for Mac word processing program on an Apple IMAC computer,” that he had “deleted the digital file [he] had created in preparing the will immediately after printing a copy of the will,” and that “any computer files or other materials relating to the preparation of this will which were created and/or stored in electronic or digital format have been destroyed or no longer existi” (emphasis added). On May 19, 2015, Morse served an additional subpoena duces tecum upon Perla, seeking production of the Apple iMac computer he used in preparing decedent’s will. In his cover letter to Perla, Morse wrote as follows:
“All I am looking for in this subpoena is the Apple IMAC computer you told me about in connection with preparing Bill Nunz’ will. While you informed me that you deleted the file, I have a guy who thinks he can restore the hard drive and retrieve almost all of it.
“I imagine that you have concerns over confidentiality for your other clients as their work is likely to be on that computer as well. I proposed that my computer tech guy can operate under a nondisclosure order. When he restores the hard drive, we can simply do a search for all files containing the word ‘Nunz’. You should be able to identify any that deal exclusively with Mary Jane. The remaining files would then be relevant and ultimately, we may be able to locate the digital file used to create the will. We can do all of this at the courthouse or any other agreed upon location” (emphasis added).
Pending before me now is a motion by Mary Jane, seeking an order granting the following relief:
1. Quashing the May 19, 2015 subpoena duces tecum to Perla, pursuant to CPLR 2304;
*486 2. Granting a protective order, pursuant to CPLR 3103, preluding the discovery sought by the subpoena for Perla’s computer;
3. Determining that discovery is now complete;
4. Precluding Morse from any. further contact with Perla, his wife, or his firm.[4]
Opposing papers have been submitted by Morse and by Deborah, to which Mary Jane has replied.
(A)
CPLR 3101 (a) provides that “[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof.” Discovery may be sought not only from the parties to a proceeding but also from “any other person, upon notice stating the circumstances or reasons such disclosure is sought or required” (CPLR 3101 [a] [4] [emphasis added]). Our Appellate Division has made clear the standard to be applied in assessing a contested discovery demand:
“The phrase ‘ “material and necessary should be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason” ’ (Matter of Wendy’s Rests., LLC v Assessor, Town of Henrietta, 74 AD3d 1916, 1917 [2010]; see Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406-407 [1968])” (Rawlins v St. Joseph’s Hosp. Health Ctr., 108 AD3d 1191, 1192 [2013]).
CPLR 3103 (a) permits “any person from whom or about whom discovery is sought” to move for “a protective order denying, limiting, conditioning or regulating the use of any disclosure device ... to prevent unreasonable annoyance, expense, embarrassment, disadvantage, or other prejudice to any person or the courts.” Moreover, any party opposing the disclosure, not just the nonparty, may seek the protective order *487 (see Velez v Hunts Point Multi-Serv. Ctr., Inc., 29 AD3d 104, 111 [2006]).[5]
The information sought here by the Morse objectants is electronically stored information (ESI) which they believe should be retrievable from Perla’s computer. In Tener v Cremer (89 AD3d 75, 78-79 [2011]), the Appellate Division, First Department, explained the legal principles involved when such information is at issue:
“In this day and age the discovery of ESI is commonplace. Although the CPLR is silent on the topic, the Uniform Rules of the Trial Courts, several courts, as well as bar associations, have addressed the discovery of ESI and have provided working guidelines that are useful to judges and practitioners. Indeed, in 2006, the Conference of Chief Justices approved a report entitled ‘Guidelines for State Trial Courts Regarding Discovery of Electronically Stored Information’ . . . New York’s Uniform Rules for the Trial Courts specifically contemplate discovery of ESI. Rule 202.12 (c) (3) allows a court, where appropriate, to establish the method and scope of electronic discovery (Uniform Rules for Trial Cts [22 NYCRR] § 202.12 [c] [3]).
“The Uniform Rules addressing the discovery of ESI are fairly recent. They took effect in 2009. However, the Rules of the Commercial Division of the Supreme Court have addressed discovery of ESI for some time. Rule 8 (b) of the rules contains requirements similar to those in the Uniform Rules (22 NYCRR 202.70 [g]). The Commercial Division for Supreme Court, Nassau County has built on Commercial Division rule 8 (b) to develop the most sophisticated rules concerning discovery of ESI in the State of New York. That court also publishes in-depth guidelines for the discovery of ESI (the Nassau Guidelines). While aimed at parties, the *488 Nassau Guidelines are appropriate in cases, such as this, where a nonparty’s data is at issue” (emphasis added).
The Tener Court also pointed out that “ESI is difficult to destroy permanently. Deletion usually only makes the data more difficult to access. Accordingly, discovery rules contemplate data recovery” (id. at 79 [emphasis added]). Furthermore, as our Appellate Division, Fourth Department, has noted in Matter of Irwin v Onondaga County Resource Recovery Agency (72 AD3d 314, 319-320 [2010]):
“Nearly ‘every electronic document contains meta-data’ (Simon, E-Discovery, Coming to Terms with Metadata, NYLJ, Oct. 27, 2008, at S2, col 2). As earlier referenced, we now set forth a detailed definition of the term metadata for those lacking familiarity with the term. Metadata is ‘secondary information’ not apparent on the face of the document ‘that describes an electronic document’s characteristics, origins, and usage’ (Spiro and Mogul, Expert Analysis, Southern District Civil Practice Roundup, ‘The New Black’: Meditations on Metadata, NYLJ, Feb. 5, 2009, at 3, col 1).”
Justice Fahey’s opinion in Irwin distinguished several possible types of metadata which might be sought in discovery: substantive metadata, system metadata, and embedded meta-data (id. at 320-321). Irwin also noted that “whether metadata is subject to disclosure has been broached in a number of other jurisdictions” (id. at 319), and the Irwin Court expressly “limited” its direction to disclose certain metadata “to the facts of this case in this evolving area of the law” (id. at 319):
“The metadata at issue in this case includes file names and extensions, sizes, creation dates and latest modification dates of digitally-stored photographs, and thus it appears to be of the ‘system’ variety. Records stored in an electronic format are subject to FOIL (see generally Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 464 [2007]). We are therefore constrained to conclude that the subject ‘system’ metadata, which is at its core the electronic equivalent of notes on a file folder indicating when the documents stored therein were created or filed, constitutes a ‘record’ subject to disclosure under FOIL (see Public Officers Law § 86 [4]). We do not, however, reach the issue whether metadata of any *489 other nature, including ‘substantive’ and ‘embedded’ metadata, is subject to disclosure under FOIL. Moreover, we do not address the issue concerning whether and when metadata of any nature is subject to disclosure under the CPLR” (id. at 322 [emphasis added]).
In Matter of Tilimbo v Posimato (36 Misc 3d 1232[A], 2012 NY Slip Op 51579[U], *3 [2012]), Bronx County Surrogate Holzman made clear that e-discovery such as the Morse object-ants now seek is generally permissible:
“Generally, as between parties to an action or proceeding, the court has ‘broad discretion to regulate the use of any disclosure device’ (see Dartnell Enter., Inc. v Hewlett Packard Co., 33 Misc 3d 1202 [A], 2011 NY Slip Op 51758 [U] [2011], quoting Matter of O. Winston Link Revocable Trust, 24 Misc 3d [768,] 768. [2009], citing CPLR 3103). As between parties, it is well settled that ‘[r]aw computer data or electronic documents are discoverable,’ and general principles such as the ‘material and necessary’ requirement embodied in CPLR 3101 (a) applies to electronically stored information (ESI) on computers (see Dartnell Enter., Inc., 33 Misc [3d] 1202 [A], 2011 NY Slip Op 51758 [U], quoting Lipco Elec. Corp. v ASG Consulting Corp., 4 Misc 3d 1019 [A], 2004 NY Slip Op 50967[U] [2004]; see also 150 Nassau Assoc. LLC v RC Dolner, LLC, 30 Misc 3d 1224 [A], 2011 NY Slip Op 50182 [U] [2011]; T.A. Ahern Contr. Corp. v Dormitory Auth., 24 Misc 3d 416 [2009]). Furthermore, ESI and the documents generated in that native language form may be discoverable even when a hard copy is provided (see Dartnell Enter., Inc., 33 Misc [3d] 1202 [A], 2011 NY Slip Op 51758 [U]; T.A. Ahern Contr. Corp., 24 Misc 3d at 416; Lipco Elec. Corp., 4 Misc 3d 1019 [A], 2004 NY Slip Op 50967 [U])” (emphasis added).
Indeed, as Surrogate Holzman went on to note in Tilimbo'. “Where ESI discovery of a nonparty has been sought, courts have permitted the discovery. For example, a nonparty attorney draftsperson was directed to produce the electronic files of prior drafts of the will (see Matter of Stachiw, 25 Misc 3d 1236 [A], 2009 NY Slip Op 52439 [U] [2009])” (2012 NY Slip Op 51579[U], *4 [emphasis added]).
*490 (B)
(i)
With nonparty discovery, CPLR 3101 (a) (4) requires that a subpoenaing party sufficiently state the “circumstances or reasons” which support disclosure from the nonparty, “either on the face of the subpoena itself or in a notice accompanying it” (Matter of Kapon v Koch, 23 NY3d 32, 39 [2014]). The Court of Appeals in Kapon pointed out that the reason for including such information with the subpoena is “to apprise a stranger to the litigation . . . why the requested disclosure was sought or required” (id. at 39). “Thus, so long as the disclosure sought is relevant to the prosecution or defense of an action, it must be provided by the nonparty” (id. at 38), and an application to quash (or for a protective order) may be granted “ ‘ “[o]nly where the futility of the process to uncover anything legitimate is inevitable or obvious” ... or where the information sought is “utterly irrevelant to any proper inquiry” ’ ” (id. at 38).
Here, Morse states in his attorney affirmation in opposition to Mary Jane’s motion that, “the purported will contains suspicious inconsistencies which place its validity squarely into question.” In relevant part, Morse states that,
“[significantly, all of the dispositive provisions of the will are contained on the first page.
“Also significant is the fact that the first page of the will contains the following small notation at the bottom of the page:
“Page 1 — Last Will and Testament of William R. Nunz
“If the draftsman of the will saw fit to place a notation at the bottom of the first page of the will, a notation which includes the identity of the testator and the number of the particular page of the will, then it stands to reason that the following pages of the will necessarily will contain similar notations adjusted only for the particular page number.
“However, with the purported will of Mr. Nunz, no such notations are found on either page 2 or page 3.
“It is unnatural that a draftsman would deliberately create this inconsistency in the various pages of the will.”
*491 Morse further states that
“[o]bjectants need the ESI — Digital File to demonstrate that the will offered for probate is not, in fact, the last will and testament of their father. Unless this ESI — Digital File can be reproduced from another source, Mr. Perla’s actions will totally block Objectants from the very evidence which would prove, without question, their defense to the Proponent’s Petition for probate.
“This, of course, is the reason for the second Subpoena Duces Tecum upon Keith D. Perla, Esq. — to secure possession of his laptop computer,; restore the hard drive and access what remains of the ESI — Digital File allegedly used to create the purported will” (emphasis added).
I find that the disclosure sought by the Morse objectants meets the threshhold requirements of CPLR 3101 (a) (4), and Morse’s letter to Perla accompanying the subpoena sets out the “circumstances or reasons” that underpin the request for production of ESI (see supra at 485). In light of Perla’s deletion of the computer file containing the draft of decedent’s will, the ESI on Perla’s computer may provide information useful to the Morse objectants’ contentions about the will.
(ii)
That the request for discovery of specified ESI from Perla’s computer is proper on its face does not end the inquiry or determine the issue of whether a protective order is warranted. Electronic discovery is not necessarily a simple matter, and wholesale rummaging through a computer is never countenanced. The inquiry and the forensic foray are each necessarily nuanced. In 2012, the New York State Bar Association (NYSBA) E-Discovery Committee released useful e-discovery guidelines,[6] the comment to one of which is particularly relevant here:
“GUIDELINE NO. 9: Parties should carefully evaluate how to collect ESI because certain methods of collection may inadvertently alter, damage, or destroy ESI. In considering various methods of collecting ESI, parties should balance the costs of collection with the risk of altering, damaging, or destroying ESI and the effect that may have on the lawsuit.
*492 “Comments: In e-discovery, computer forensics relates to the science and art of examining and retrieving ESI from computers and other electronic devices and their associated storage devices, as well as the Internet, using methods validated by legal authorities and designed to facilitate the admissibility of evidence. In many cases, conducting e-discovery requires special handling where there is risk of ESI being inadvertently or purposefully altered or destroyed, or because certain ESI can only be extracted using special forensics techniques. In addition, in certain cases it is preferable to use an independent expert to avoid questions about whether self-interested parties may have affected the results.
“Contents of storage media may be compromised because the media has degraded or has been damaged, or because some or all of the content has been deleted accidentally or intentionally by reformatting, repartitioning, reimaging, or using specialized software to perform thorough overwrites. Metadata may be altered by the simple act of moving a file to a new location, as is routinely done using common copying utilities.
“To the dismay of many users, most computers do not remove the contents of a file when it is deleted, either when deleted manually by users or automatically by the system. In most operating systems, the contents of the file remain on the storage medium, while information about the file is removed from the file system directory. In some systems, even much of the metadata remains. ESI will remain on the storage medium until the operating system reuses (overwrites) the space for new data. Even when extreme attempts have been made to delete content, or the storage media has been severely damaged, forensics experts have been able to recover substantial evidence. . . .
“Forensic experts and e-discovery practitioners are guided in any particular ESI acquisition situation by the circumstances and requirements of that particular situation, such as agreements reached among the parties, relevance and importance of ESI, cost and time constraints, potential business interruption issues, and claims of privilege. Aside *493 from these circumstances and requirements, forensic experts and e-discovery practitioners need to be able to represent that they have taken all reasonable steps to ensure that all captured content has been preserved unaltered” (Best Practices In E-Discovery In New York State and Federal Courts, Version 2.0, Report of the E-Discovery Committee of the Commercial and Federal Litigation Section of the New York State Bar Association at 20 [Dec. 2012] [emphasis added]).[7]
Given the complexity of e-discovery issues, something more is required from the Morse objectants than their attorney’s assertions that a forensic examination of Perla’s computer “should be able to generate an exact unsigned paper copy of the purported will” (emphasis added), and that such an examination will reveal “metadata describing the document’s creation, modification and last access date.”[8]
More to the point, given the potential for harm in the forensic examination process, I am not prepared to allow any e-discovery request predicated on the assertion that counsel “ha[s] a guy who thinks he can restore the hard drive and retrieve almost all of it” (emphasis added). Similarly, I am not prepared to allow indiscriminate access to an attorney’s computer where there may be attorney-client privilege issues involved, or unrelated confidential information on it, based on the mere assertion by Morse that “[his] computer tech guy can operate under a non-disclosure order” (emphasis added). These are sensitive issues, and they need to be carefully explored and resolved first before any forensic examination of the computer is permitted.
(iii)
Accordingly, I direct Morse to obtain an affidavit from his proposed computer expert, to be filed with this court no later than September 15, 2015, detailing and explaining the following:
1. the expert’s name, address, qualifications and credentials;
*494 2. the expert’s opinion regarding the ability to retrieve the relevant ESI from Perla’s computer, including, if being sought, what type of metadata is at issue (using the definitions set out in the Irwin decision);
3. how long the process ESI discovery and examination of Perla’s computer would take to complete, whether it can be done at Perla’s office, or whether some other approach or place is either necessary or desirable',
4. what exactly the expert would need to accomplish the data retrieval;
5. how the expert proposes to identify and protect ESI on Perla’s computer which may be subject to the attorney-client privilege or to other confidentiality considerations; and
6. what the expert proposes with respect to the considerations set out in Commercial Division, Nassau County, Guidelines for Discovery of Electronically Stored Information (“ESI”), section II.C., items 3, 5, 6, 8, 9, 11, 13, and 15 (available online at http://www.nycourts.gov/courts/comdiv/PDFs/Nassau-E-Filing_Guidelines.pdf, cached at http://www.nycourts.gov/ reporter/webdocs/Nassau-E-Filing_Guidelines.pdf). (See also Uniform Rules for Trial Cts [22 NYCRR] §§ 202.12 [c] [3] [i]-[x]; 202.70 [g].)
The Nassau Guidelines have been characterized by the Appellate Division, First Department, as “provid[ing] a practical approach” to resolving e-discovery issues, and as “halving] the benefit of giving the court flexibility to determine literally whether the discovery is worth the cost and effort of retrieval” (Tener v Cremer at 81). A “cost-benefit” analysis may be necessary depending on what Morse’s computer expert proposes in the affidavit to be submitted. While Morse has said that “[since] they are expected to be minimal, objectants will pay all expenses with restoring Mr. Perla’s hard drive,” he has also said that, if “a more formal e-discovery procedure for restoring and retrieving the ESI-Digital File [is insisted upon by opposing counsel or by Perla], the cost fairly can and should be allocated 100% to [Mary Jane]” (June 16, 2015 affirmation of Michael O. Morse, Esq., at 84, 88). That, however, is a matter to resolve after all further submissions have been received.
I therefore defer determination on all branches of Mary Jane’s motion until the affidavit from the Morse objectants’ computer expert is submitted to the court and to all other parties. Furthermore, any other party shall have until September *495 30, 2015 to file any responding papers to such expert’s affidavit. The motion shall be deemed finally submitted as of the close of business on September 30, 2015.
Finally, I direct that Perla shall ensure that the computer on which he drafted decedent’s 2012 will at issue here is preserved and is not removed, replaced or destroyed, pending the further order of this court.

. Perla was also the attorney-draftsperson of the will.

. Deborah has been appearing in a self-represented posture throughout.

. Morse represents objectants William Jr., Kathleen, Michael, and Tambra (hereafter, the Morse objectants).

. Perla has submitted an affidavit in support of the fourth branch of Mary Jane’s motion. In his affidavit, Perla asks for a protective order, because, he says, he believes that Morse “is attempting to intimidate me from testifying by engaging in deceptive, burdensome, and repetitive discovery” and “is promoting malicious lies about me and my wife in this litigation.”

. The same “standing” standard applies generally on a motion to quash a subpoena pursuant to CPLR 2304 (see generally Patrick M. Connors, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2304:l at 73 [2010 ed]). There are conflicting cases as to the circumstances in which a motion to quash a nonjudicial subpoena can be made (compare Brooks v City of New York, 178 Misc 2d 104 [1998], with Rubino v 330 Madison Co., LLC, 39 Misc 3d 450 [2013]). However, because the ultimate relief in a 3103 (a) and a 2304 application is functionally the same, I proceed here only with the motion for a protective order, and, thus, I need not, and do not, decide whether Mary Jane’s 2304 motion to quash is properly before me.

. The report was approved by the NYSBA Executive Committee on April 5, 2013.

. The report is available online at http://www.nysba.org/workarea/ DownloadAsset.aspx?id=51833, cached at http://www.nycourts.gov/reporter/ webdocs/DownloadAsset.pdf.

. Morse has at least two theories as to how e-discovery might establish the conclusion he propounds. First, if no draft is found on the computer, Morse says that will prove the propounded document is a fraud. Alternatively, Morse suggests that if e-discovery yields a will draft, the first — dispositive— page may be different from what is being propounded.